## PFEIFFER et al. v. UNITED BOOKING OFFICE, Inc., et al.

### No. 49 C 119.

United States District Court
N. D. Illinois, E. D.

April 26, 1950.

Blum & Sang (Henry S. Blum, Bernard G. Sang, Chicago, Ill.), and Vincent J. Carney, all of Chicago, Ill., for plaintiff.

Charles R. Kaufman, Thomas C. Strachan, Jr., Chicago, Ill., Pope & Ballard, Chicago, Ill., for defendants.

SULLIVAN, District Judge.

Defendants United Booking Office, Inc., Select Operating Corporation and Select Theatres Corporation move to dismiss the complaint or, in lieu thereof, to quash the return of summons on them upon the grounds that (a) the court lacks jurisdiction over the person of these defendants, or any of them, (b) the venue is improper as to these defendants, and each of them, (c) the process against these defendants was not properly issuable from this court, and (d) the service of process was insufficient and void.

The venue and jurisdiction of the court in this action is governed as to the moving defendants by Section 12 of the Clayton Act, 15 U.S.C.A. § 22, which reads as follows: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found. Oct. 15, 1914, c. 323, § 12, 38 Stat. 736."

Plaintiffs do not claim that any of the moving defendants was "found" in this district or is an "inhabitant" hereof. Their argument for the jurisdiction (in the sense of venue) of this court over said defendants rests solely on the contention that they "transact business" in this district within the meaning of the above quoted

statute. This is the narrow issue before the court, since unless each defendant "transacts business" here, the action as to it must be dismissed because venue will then be improper, 28 U.S.C.A. § 1391(c), and service outside of the district will have been insufficient to confer jurisdiction on this court, Rule 4(f), Fed.Rules of Civil Procedure, 28 U.S.C.A.

The burden of proof of jurisdiction and venue and therefore of showing that defendants transact business in this district is upon the plaintiffs. Becker v. Angle, 10 Cir., 165 F.2d 140.

Plaintiffs rely entirely upon the recent interpretation by the Supreme Court of Section 12 of the Clayton Act in United States v. Scophony, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, which they view as changing previously established rules. The Scophony case concerned a British corporation which, in the years prior to World War II, had been engaged in the manufacture and sale of television apparatus in Great Britain. When the war broke out, television broadcasting in England was suspended, and the corporation transferred virtually its entire activities to New York to exploit the American market. It opened an office in New York, sent personnel there, began demonstrations of its products, joined with United States corporations in manufacturing and selling and exploiting its television inventions, maintained control over its United States subsidiaries through complex contractual arrangements and interlocking directorates, and at the time of suit was represented in New York by two of its directors, one of whom was also its principal creditor and mortgagee of all of its assets, and held a comprehensive power of attorney from the British directors. His authority was so complete that "for all relevant purposes," in the words of the court, he "was the company." On this set of facts the Supreme Court held that the British corporation was "transacting business" and was "found" in the Southern District of New York, within the meaning of Section 12 of the Clayton Act, so that it could be sued and served there in a civil proceeding under the anti-trust laws.

Plaintiffs rely on the following extract from Mr. Justice Rutledge's opinion, 333 U.S. at page 810, 68 S.Ct. at page 863, 92 L.Ed. 1091; "* * * To say that on the facts presented Scophony transacted no business 'of any substantial character' there during the period covered by institution of the suit and the times of serving process would be to disregard the practical, nontechnical, business standard supplied by 'or transacts business' in the venue provision."

However, defendant asserts that the "practical, nontechnical, business standard" suggested by Justice Rutledge in nowise aids plaintiffs' claim that the moving defendants were "transacting business" in the Northern District of Illinois.

(I) United Booking Office is a New York corporation which is engaged in the "booking" of legitimate theatrical productions. It functions as an intermediary and clearing house between the producers of theatrical shows and the owners of theatres.

Plaintiffs rely on the fact that one of the theatre owners for which United Booking Office acts as booking agent is Select Lake City Theatre Operating Company, an Illinois corporation which leases and operates theatres in Chicago. The officers of Select Lake City in New York arrange, through United Booking Office, for the renting of the Chicago theatres to the producers of shows. When the producer and the officers of Select Lake City have come to an agreement, a contract between them is signed. United Booking Office has no authority to bind or contract for Select Lake City Theatre Operating Company, is not a party to contracts between Select Lake City and the producers of shows, and does not sign such contracts. When Select Lake City officers in New York have entered into such a contract, an employee of United Booking Office, Elias Weinstock, who handles booking for Select Lake City's theatres and many others, forwards information about it and a copy of the contract to Sam P. Gerson, the managing agent of the Chicago theatres operated by Select Lake City. If any questions concerning the contract arise during the show's engagement in Chicago, Gerson may communicate with Weinstock and Weinstock will thereupon

discuss the matter with the show producer and the officers of Select Lake City Theatre Operating Company.

The major decisions as to the rental of the Chicago threatres and the terms thereof are made by the officers of Select Lake City who are in New York. Weinstock, being in New York, and in close touch with the officers of Select Lake City, knows of their decisions and of the rental contracts which they sign and he sends information and copies to Gerson directly.

Plaintiffs' entire contention that United Booking Office, Inc., transacts business in Illinois is based upon correspondence between Mr. Weinstock of that company and Mr. Gerson of Select Lake City Theatre Operating Company. The great bulk of this correspondence consists of letters by Mr. Weinstock concerning and forwarding contracts relating to future productions and acknowledgments thereof by Mr. Gerson.

However, the correspondence does not indicate that United Booking Office, Inc., "managed" Select Lake City Theatre Operating Company. United Booking Office, Inc., is a corporation located in New York City. It engages in the booking of theatrical productions for a great many theatres in all parts of the country whether or not affiliated with Select Theatres Corporation. Among the many theatres for which it acts as booking agent are those leased and operated by Select Lake City Theatre Operating Company.

United Booking Office's activities for all theatres are necessarily restricted to New York, since substantially all legitimate stage productions originate there. Inasmuch as the senior executive officers of Select Lake City Theatre Operating Company are likewise located in New York, questions arising between that company and the producers of shows are generally settled in New York between said officers and the producers, with United Booking Office and Weinstock functioning as intermediaries. When a question arises during the run of a show, Gerson therefore will communicate with either the officers of Select Lake City Theatre Operating Company in New York or with Weinstock, knowing that in the latter event Weinstock will take the matter up with said officers and the producer of the show, and that he will be informed of the decisions by Weinstock. Neither United Booking Office nor Weinstock makes any of such decisions nor has the power so to do; all such decisions are made by the senior executive officers of Select Lake City Theatre Operating Company in New York with whom Weinstock frequently consults. Consequently United Booking Office, Inc., is not only merely an agent for Select Lake City Theatre Operating Company but is in fact an agent without authority to contract for its principal. The testimony is that neither Weinstock nor any other employee of United Booking Office, Inc., has any independent authority or control over Gerson; any possible implication to the contrary in the correspondence is explained by the fact that, where Weinstock appears to be instructing Gerson, he is merely passing on directions he has received from Gerson's superior officers in Select Lake City Theatre Operating Company.

■ United Booking Office is a New York corporation, and its only connection with this district arises from services performed in New York for an Illinois corporation. As such, it is not "transacting business" here within either a legal or a "practical, nontechnical, business" definition of the term.

(II) Select Theatres Corporation is a New York corporation having its place of business in New York City. It does not maintain an office or telephone listing in Illinois; it is not licensed to do business as a foreign corporation in the State of Illinois.

Plaintiffs apparently rely on the fact that Select Theatres Corporation owns all of the stock of Select Lake City Theatre Operating Company, which leases and operates theatres in Chicago. However, the separation between parent and subsidiary is a real one, both in fact and in legal theory. Select Lake City Theatre Operating Company has its own bank accounts, its own books of account and records, its shareholders and directors hold regular meetings, its employees are paid from its own payroll, and it files its own individual tax re-

turns and corporate reports. It performs no services for its parent.

Plaintiffs' entire contention with respect to Select Theatres Corporation rests upon a few letters written to Gerson by Messrs. Mallam, Whittaker and Rosenfeld on the stationery of Select Theatres Corporation. Plaintiffs assert that these three individuals were in fact "the actual operators" of the Chicago theatres, and instructed Gerson as to the "day to day business" thereof.

Mallam performs the work of countup—the purely accounting job of checking tickets for tax payments—for a great many theatres. Among these are the theatres operated by Select Lake City Theatre Operating Company, and his entire correspondence with Select Lake City is devoted to letters relating to the transmission by that company of tickets to Mallam for this purpose and inquiries concerning the same.

The Whittaker correspondence, with the exception of two letters relating to an insurance inspection under a group policy, relates to an arrangement whereby envelopes for tickets would be furnished the various Chicago theatres, with payment to be made for the advertising material printed thereon. It appears that Whittaker is obtaining and transmitting information at the direction of the executives of Select Lake City Theatre Operating Company.

The same comments apply to the Rosenfeld correspondents. This consists of letters between Rosenfeld and Gerson inquiring as to the best prices at which carpets and uniforms could be obtained, or as to the delivery dates of carpeting, and to the renovation of the Shubert Theatre lobby. Mr. Rosenfeld's letter to Mr. Gerson with reference to the latter states that J. J. Shubert (President of Select Lake City Theatre Operating Company) has told Rosenfeld he does not wish to do the Shubert lobby, and suggests that Gerson discuss the situation with Mr. Shubert if he wishes.

Contrary to plaintiffs' claim that the directions given in the correspondence "relate to the day-to-day business of the theatres," the correspondence on which plaintiffs rely actually concerns only a few minor items of business and contains no instructions or directions. Although Messrs. Mallam, Whittaker and Rosenfeld perform some services for Select Lake City Theatre Operating Company, they do not have authority to contract for said company without approval of its officers, nor any authority over the personnel or operations of said company.

The sole basis for plaintiffs' claim that it transacts business in Illinois is that its letterhead was used in correspondence concerning some matter relating to the operations of Select Lake City Theatre Operating Company. By no "practical, nontechnical, business" or other standard would this constitute "transacting business" in Illinois so as to subject Select Theatres Corporation to suit in this jurisdiction.

Select Operating Corporation is also a New York corporation having its principal place of business in New York City. It does not maintain an office or telephone listing in this district, nor is it licensed to do business as a foreign corporation in the State of Illinois.

(III) Select Operating Corporation is also a subsidiary of Select Theatres Corporation, the parent of Select Lake City Theatre Operating Company. The corporations are again entirely separate and separately maintained.

Plaintiffs stress the fact that letters written to Gerson by Waters, the treasurer of Select Lake City Theatre Operating Company, are written on the stationery of Select Operating Corporation and are signed Select Operating Corporation, by John P. Waters, Treasurer. Waters is the Treasurer of Select Lake City Theatre Operating Company and as such is Gerson's senior officer. Waters testified that he writes from forty to fifty letters a day and that until the matter was brought up during this litigation, he never paid any attention to the stationery or the particular form of signature used on his letters. This is the situation of the officer of two companies writing one company with reference to its business on the letterhead of the other company. Such usage, and the form of signature, would not constitute "transacting business" under either a legal or

a "practical, nontechnical, business" interpretation of the term. Select Operating Corporation is a New York corporation, whose only connections with Select Lake City Theatre Operating Company arise from the fact that both are subsidiaries of the same company and that personnel of Select Operating Corporation sometimes renders assistance to the Chicago staff of Select Lake City.

In conclusion, the sole basis for plaintiffs' claim that the moving defendants transact business here is that they "manage" Select Lake City Theatre. Operating Company, and plaintiffs attempt to sustain this claim by referring to correspendence on the letterheads of said companies therewith. Out of this correspondence only two types of letters containing any orders or directions to the local management of Select Lake City Theatre Operating Company were produced—those in which a representative of said company's booking agent transmits directions of the executive officers of Select Lake City Theatre Operating Company, and those in which Mr. Waters, an executive officer of Select Lake City Theatre Operating Company, gives instructions to his subordinates. Neither evidences that any of the defendants manages Select Lake City Theatre Operating Company. This leaves to support plaintiffs' claim only the use by persons in New York of letterheads of New York corporations in correspondence with Select Lake City Theatre Operating Company. However, usage of such stationery does not constitute transacting business in this state.

In Winkler-Koch Engineering Co. v. Universal Oil Prod. Co., D.C., 70 F.Supp. 77, a motion to dismiss was sustained under circumstances more favorable to the plaintiff than here. The local subsidiary in that case performed services essential to the defendant's overall production and distribution program, defendant's name was listed in the local telephone directories, the subsidiary's employees solicited customers for the defendant, forwarded orders for products thereto, accumulated information therefor, and participated in the defendant's pension plan. The court, finding that the corporations were in fact separate, as here, ruled that the substantial connections between the defendant and its local subsidiary did not constitute a transaction of business by the defendant within the district.

A dismissal of this action will not work a hardship on the plaintiffs in view of the fact that they have already filed a complaint against the moving defendants in the Southern District of New York.

I have concluded that plaintiffs have failed to sustain their burden of proving the jurisdiction of this court. I am of the opinion that the defendants did not "transact business" in this district within Section 12 of the Clayton Act. The action should therefore be dismissed as to each of the moving defendants.