**UNITED INDUSTRIAL CORPORATION,**
Plaintiff,

v.

**NUCLEAR CORPORATION OF AMER-
ICA et al., Defendants.**

Civ. A. No. 2718.

United States District Court
D. Delaware.

Dec. 11, 1964.

David F. Anderson, Berl, Potter & Anderson, Wilmington, Del., Stroock & Stroock & Lavan, New York City, of counsel, for plaintiff.

H. Albert Young, Bruce M. Stargatt, Morford, Young & Conaway, Wilmington, Del., Benjamin C. Howard, Miles & Stockbridge, Baltimore, Md., of counsel, for defendants Nuclear, Martin-Marietta Corp. and David Thomas.

Clair John Killoran, Killoran & Van Brunt, Wilmington, Del., Winthrop, Stimson, Putnam & Roberts, New York City, of counsel, for defendant Bear, Stearns & Co. and remaining defendants.

STEEL, District Judge.

Motions have been filed by all defendants to dismiss the action. They raise questions of subject matter jurisdiction, personal jurisdiction, venue and the validity of attachments of property of nonresident defendants.

The plaintiff, United Industrial Corporation, is a Delaware corporation. The defendants are: Nuclear Corporation of America, a Delaware corporation (Nuclear); David Thomas, its president; Martin-Marietta Corp., a Maryland corporation (Martin), which owns 23% of the stock of Nuclear; Bear, Stearns & Co., a New York limited partnership and its members, in both their partnership and personal capacity. The partnership and its members own 16.6% of the stock of Nuclear. All of the individual defendants reside outside of the state of Delaware.

Although Martin is a Maryland corporation, it has registered to do business in Delaware. Since the filing of the motions, the attachment of Martin's property has been voluntarily vacated by plaintiff, personal jurisdiction over it has

**974**

been obtained, and venue has been conceded. As to Martin, the motion is moot, except as to subject matter jurisdiction.

## A. SUBJECT MATTER JURISDICTION

The complaint alleges three causes of action.

The first cause of action alleges that in derogation of § 10(b) of the Securities Exchange Act of 1934 ("Securities Act" or "Securities Act of 1934"), 15 U.S.C. § 78j(b),[1] and Rule 10(b)–5 thereunder, defendants, who had influential connections with Nuclear either as officers, directors or substantial stockholders, used interstate instrumentalities in effectuating a conspiracy among themselves to defraud plaintiff by causing it to enter into a contract dated May 2, 1961 with defendant Nuclear (Semcor contract) under which Nuclear purchased from plaintiff 893,800 shares of the common stock of U. S. Semiconductor Products, Inc. (Semcor) in consideration for Nuclear issuing to plaintiff as part of the consideration 536,280 shares of Nuclear's capital stock. It is alleged that the fraud was accomplished by one or more of defendants falsely representing that Martin would place substantial business with Nuclear or its subsidiaries, that the stock of Nuclear to be issued to plaintiff would be and remain marketable, and that Bear, Stearns & Co. would underwrite an offering thereof. It is charged that as a result of this fraud, plaintiff was damaged in that it transferred its Semcor stock to Nuclear but has been unable to sell 321,-642 shares of the Nuclear stock which it received and was required to sell 214,638 shares of such Nuclear stock at prices below those which prevailed when the Semcor contract was made. Relief is asked against all defendants.

■ Jurisdiction of the subject matter of the first cause of action exists under § 27 of the Act, 15 U.S.C. § 78aa.[2]

The second cause of action alleges that the Semcor contract required Nuclear to register with the SEC all or any part of the shares of Nuclear delivered to plaintiff, if plaintiff should request it to do so within two years ending May 9, 1963, and that Nuclear breached its agreement in this regard. It further alleges that defendants, Thomas excepted, induced Nuclear to refuse to register 321,642 of such shares when plaintiff requested it to do so on May 24, 1962. It is alleged that because of these actions plaintiff has been prevented from selling the shares to its substantial damage. Relief is asked against all defendants, except Thomas.

By the third cause of action plaintiff seeks to recover from Nuclear the balance of $166,666.67 due on a promissory note which the Complaint alleges Nuclear issued to plaintiff pursuant to the Semcor contract. Relief is asked against Nuclear alone.

Presumably, jurisdiction over the second and third causes of action is asserted upon the basis of "pendent jurisdiction", for unlike the first cause of action, neither purports to allege a violation of the Securities Act.[3] The second cause of action has a dual aspect in that it alleges a common law action for breach of contract and a common law tort action for inducing the breach. The third cause of action alleges a common law action to recover on a promissory note.

In the leading case of Hurn v. Oursler, 289 U.S. 238, 245–247, 53 S.Ct. 586, 77

[1] In paragraph 1 of the Complaint, the citation of the statute is erroneously given as 15 U.S.C. § 73j(b). It should be 15 U.S.C. § 78j(b).

[2] Section 27 in part provides:
"The district courts of the United States, * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. * * * *"

[3] Paragraph 1 of the Complaint is incorporated by reference in each of the three causes of action, and alleges that "the action" arises under the Securities Act of 1934 and under principles of "pendent jurisdiction".

L.Ed. 1148 (1933), a distinction was noted between a case where two distinct grounds in support of a single cause of action are alleged, only one of which presents a federal question, and a case where two separate and distinct causes of action are alleged, only one of which is federal in character. The Court stated that in the former situation, if the federal question is not plainly wanting in substance, the federal court may retain and dispose of the case upon both the federal and non-federal grounds; but if two distinct causes of action are stated, the Court may not adjudicate the non-federal cause of action. The Court then examined the original bill to determine whether it alleged the violation of a single right, and finding that it did, upon this basis held that jurisdiction existed to adjudicate the non-federal ground.

When the Complaint at bar is analyzed in the light of Hurn v. Oursler, it is clear that it does not allege a single cause of action. On the contrary, each cause of action alleges the violation of a right which is separate and distinct from that alleged in the other causes of action.

The first cause of action is based upon the right of a person to be protected against being fraudulently induced to enter a contract to his detriment. It is this right, statutorily protected by § 10(b) of the Securities Act when interstate instrumentalities are used in the perpetration of a fraud in connection with the purchase or sale of securities, which the first cause of action alleges to have been violated. The second and third causes of action are based upon the right of one person to a contract to have it performed by the other party to it. In addition, the second cause of action is founded upon the right of a person to be free from unwarranted interference by third parties in the performance of a contract which he has entered into with another. It is these legally protected rights which were violated if the second and third causes of action can be proven.

■■ The fact that the three causes of action are in reality separate and distinct within the Hurn v. Oursler concept, and not simply separate grounds to support a single cause of action, is emphasized by a consideration of the proof necessary to establish plaintiff's right to recover. If the first cause of action is proven, the evidence will not establish plaintiff's right to recover on either the second or third cause of action; and conversely, if either the second or third cause of action is proven, the evidence will fall far short of that required to substantiate the first cause of action. While complete identity of facts needed to prove a federal and a non-federal claim is not required to bring the claims within the unitary cause of action concept, a substantial amount of overlapping testimony is necessary. See American Securit Co. v. Shatterproof Glass Corp., 166 F.Supp. 813, 825–826 (D.Del.1958), aff'd, 268 F.2d 769 (3rd Cir.), cert. denied 361 U.S. 902, 80 S.Ct. 210, 4 L.Ed. 2d 157 (1959).

Pendent jurisdiction, therefore, is not an appropriate basis on which to sustain the second and third causes of action.

■■ Nor can they be supported jurisdictionally upon the basis of diversity of citizenship under 28 U.S.C. § 1332(a) (1). Plaintiff is a Delaware corporation and it seeks relief against Nuclear, another Delaware corporation, in both the second and third causes of action. Hence there is no complete diversity of citizenship between all plaintiffs on the one hand, and all defendants on the other hand in either the second or third cause of action. This is essential to jurisdiction based upon diversity of citizenship. 1 Barron and Holtzoff, Federal Practice and Procedure § 26, p. 145 (Wright Ed. 1960).

### B. PERSONAL JURISDICTION

No personal jurisdiction has been obtained over any of the defendants except Nuclear and Martin.

### C. SECURITIES ACT—VENUE

Since subject matter jurisdiction of the second and third causes of action is lacking, only venue as it pertains to the first cause of action will be considered.

Section 27 of the Securities Act requires that an action to enforce any liability or duty created by the Act or rules or regulations thereunder be brought in a district where (1) any act or transaction constituting the violation occurred, (2) a defendant is found, (3) is an inhabitant, or (4) transacts business.[4]

1. *Defendant Thomas.* Plaintiff makes no contention that Thomas is an inhabitant of Delaware or transacts business here. It argues that Thomas was found in Delaware, and that an act or transaction violative of the Act took place in Delaware.

Thomas was not found in Delaware in the sense that he was physically present in the state. Because Thomas owned property in Delaware, plaintiff argues that he was "found" here within the meaning of § 27. On its face this argument is inconsistent with the affidavit of Fein, the vice president of plaintiff, executed under 10 Del.C. § 3506 to procure the issuance of the writ of attachment against Thomas. In it Fein states that all of the defendants are non-residents of Delaware and "cannot be found".

Plaintiff argues, however, that "found" in § 3506 pertaining to foreign attachment in Delaware has a different meaning than it does in § 27 of the Securities Act relating to federal venue. Conceptually, no such distinction is justified.

Obviously, the Delaware statute does not mean to equate ownership of property by a defendant in Delaware with a "finding" of the defendant; otherwise, no property in Delaware could ever be attached. Availability for service so as to give a court *in personam* jurisdiction is necessary before an individual defendant can be "found" within the meaning of the foreign attachment law. This is also true under § 27 of the Securities Act.

The same sentence in § 27 which establishes venue in any district "wherein the defendant is found", also authorizes the service of process in any district where "the defendant may be found". These two expressions used in the same sentence must be construed to mean the same thing in the absence of context pointing to a different legislative intendment. Since a defendant can be "found" for purposes of service under § 27 only in a place where he is subject to *in personam* service, the same requirement exists insofar as venue is concerned. Plaintiff's argument that defendant can be found within this District merely because he had property here is not acceptable.

Plaintiff's alternative argument that an act or transaction violative of § 10(b) of the Securities Act took place in this District, requires a consideration of the charge. The first count nowhere alleges the states between which the instrumentalities of interstate commerce were utilized, where the conspiracy or contract was entered into, or where the misrepresentations or omissions to speak occurred. So far as appears, none of these matters took place in this District.

Plaintiff argues, however, that the very object of the conspiracy of which Thomas was a part was the delivery of the Nuclear shares to plaintiff in exchange for its Semcor stock and that this took place in Delaware. This argument is based on the fact that Nuclear is a Delaware corporation, and 8 Del.C. § 169 provides that "the situs of the ownership of the capital stock" of a Delaware corporation shall be regarded as in Delaware "[f]or all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in [Delaware]". The fact is that the Semcor contract pro-

4. Section 27 reads in part:
"* * * Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any * * * [district wherein an act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. * * *"

vided that the closing, including the delivery of the Nuclear shares, should take place in Baltimore, Maryland, on May 10, 1961. The closing did in fact take place on that date and plaintiff acquired the Nuclear shares provided for in the contract. While the record, apart from the inference deducible from the contract itself, does not disclose whether the closing took place in Baltimore, in the absence of any evidence to the contrary, it must be presumed that it did.[5]

Plaintiff attributes unwarranted significance to 8 Del.C. § 169 fixing the situs of shares of stock of a Delaware corporation in Delaware for certain purposes. Since shares of stock, as distinguished from the certificates which represent them, are intangibles, the fiction of the statute is justified for many purposes and its validity has been recognized in many types of litigation. The statutory situs, however, is not a sufficient basis for localizing the delivery of the stock in this District. Each of the other venue criteria in § 27 requires a tangible nexus between a defendant and the district where suit is brought. It is, therefore, reasonable to believe that Congress intended that the connection between an act of alleged wrongdoing and a district where the suit is brought should rest upon something more substantial than the fictional situs of the stock involved, when the certificates relevant to the alleged wrong were delivered outside of the district.

Plaintiff next points out that § 2.1 of the Semcor contract, after reciting that 7,000,000 shares of Nuclear stock were authorized, stated that Nuclear intended to promptly increase its authorized capital stock to 10,000,000 shares, and that this was done by a certificate of amendment to the Nuclear charter which was filed on June 8, 1961, in Dover, Delaware.

Since the certificate was executed by Thomas as president of Nuclear, plaintiff argues that it constituted action in Delaware which was an integral part of his alleged wrongful activities.

This argument is based upon a misconception of the significance of the amendment. The amendment did not take place until almost a month after the closing. Prior to the amendment, Nuclear had sufficient authorized but unissued stock to enable it to carry out the Semcor contract by issuing 536,280 shares of stock to plaintiff. The increase in the authorized capital stock was not related to any of the wrongs with which Thomas or the other defendants are charged. The filing of the certificate of amendment was not an "integral part of the fraud" or "of material importance to the sale", as was true in Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466, 469–470 (D.Del.1962) relied upon by plaintiff.

As to Thomas, venue is lacking.

2. *Defendant, Bear, Stearns & Co.* Preliminarily, it should be noted that the limited partnership has been identified as a defendant in two ways: first, by the partnership common name, Bear, Stearns & Co., and second, by the individual names of the persons who are the partners. At common law the latter designation was the proper one. 1 Woolley, Delaware Practice, §§ 140, 141 (1906). Under Fed.R.Civ.P. 17(b), however, a partnership may be sued in its common name when, as here, a claim is asserted against it based upon a substantive right existing under the laws of the United States. The designation of the partners by their individual names is, therefore, surplusage.[6]

Plaintiff argues, as it did in resisting Thomas' motion, that Bear, Stearns & Co. is "found" in this District, because it

---

5. The Killoran affidavit states in paragraph 7 that "it is clear that the closing under this contract did in fact take place on May 10, 1961" and reference is made to pps. 8 and 12 of the prospectus. While the prospectus states that the plaintiff acquired the Semcor shares on May 10, 1961, neither the prospectus nor the affidavit say where the closing took place.

6. What has been said does not derogate from the right of the plaintiff to name such persons as defendants in their individual non-partnership capacity, as the plaintiff has also done.

has property here. The reasons why this contention is unacceptable have been previously stated and will not be repeated.

Short shrift must also be made of plaintiff's contention that this is a district wherein an act or transaction alleged to be violative of the Act occurred. There is nothing in the record to substantiate this claim.

Finally, plaintiff contends that Bear, Stearns & Co. transacted business in Delaware and for this reason venue is proper. This is the only venue question which requires serious consideration.

No case has been cited by either party which discusses the meaning of "transacts business" for purposes of venue under § 27 of the Securities Act. But comparable statutes have been construed. Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v, provides that an action may be brought in the district wherein the defendant "transacts business", and § 12 of the Clayton Act, 15 U.S.C. § 22, contains a similar provision as respects a corporate defendant. The interpretation placed upon "transacts business" under § 12 of the Clayton Act in Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927), was followed in Securities and Exchange Commission v. Wimer, 75 F.Supp. 955, 962 (W.D.Pa.1948) when the Court construed the same venue phrase in § 22 of the Securities Act of 1933. With equal logic, the Clayton Act decisions would appear to be an appropriate frame of reference for interpreting the "transacts business" venue clause in § 27 of the Securities Act of 1934.

In United States v. Scophony Corporation of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) the Court stated that by virtue of the Eastman Kodak decision the test of venue is "[t]he practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character'" (p. 807, 68 S.Ct. p. 862). Under the Eastman Kodak and Scophony decisions the *quantum* of business which a defendant must do to satisfy Clayton Act venue is less than that necessary to sustain service

of process, Windsor Theatre Co. v. Loew's, Inc., 79 F.Supp. 871, 873 (D.D.C. 1948); the Clayton Act test can be met by fewer local contacts than "doing business" for jurisdictional purposes. Ohio-Midland Light and Power Co. v. Ohio Brass Company, 221 F.Supp. 405, 408 (S.D.Ohio 1962). The same thing is true under § 22 of the Securities Act of 1933, Securities & Exchange Commission v. Wimer, supra; Uccellini v. Jones, 182 F.Supp. 375, 376 (D.D.C.1960). Despite the comparatively latitudinous interpretation which has been given to "transacts business" for purposes of venue under § 22 of the Securities Act of 1933, the courts have insisted that the activities constitute a substantial part of a defendant's ordinary business, that they be continuous, and at least of some duration. Windsor Theatre Co. v. Loew's, Inc., supra; Westor Theatres, Inc. v. Warner Bros. Pictures, 41 F.Supp. 757 (D.N.J.1941).

The question whether a defendant "transacts business" is largely factual. Its determination requires a weighing of all of the activities of a defendant, and then ascertaining whether those activities in the aggregate satisfy the amorphous test laid down in Scophony and the cited cases which followed it.

Bear, Stearns & Co. filed answers to interrogatories on May 20, 1964, which disclosed the following facts:

As of May 20, 1964, Bear, Stearns & Co. owned no realty or personalty in Delaware, maintained no office, agent, or bank account in Delaware, had no telephone or telephone listing in Delaware, and leased no property in Delaware. It had no agents or correspondent brokerage firms in Delaware, and did not act as agent for any Delaware brokerage firm.

During 1963–64, Bear, Stearns & Co. had 12 brokerage accounts for Delaware residents. These constituted $\frac{1}{10}$th of 1% of the total number of accounts which it maintained. During the period it purchased and sold as broker 217,310 shares of stock for nine of its Delaware accounts, and it purchased and sold as principal for six of its Delaware accounts

$2,185,000 face amount of bonds and 800 shares of stock. All of these transactions were effected pursuant to orders which were received by Bear, Stearns & Co. (normally by telephone) at its office in New York City. All securities purchased by the Deleware customers were delivered to, and all securities sold by the Delaware customers were received from, a bank or brokerage firm outside of Delaware, and payment was received from or made to such bank or brokerage firm, with the following exceptions, when the securities were delivered by mail to, or received by mail from, customers in Delaware:

| | | |
|---|---|---|
| 200 shs. | Scam Instruments to Mr. Gump | $ 439.50 |
| 10 shs. | Mead-Johnson to Mr. Triulzi | 229.57 |
| 100 shs. | Farben-Bayer to Mr. Habicht | 6650.00 |
| 1600 shs. | Bankers Dispatch from Mr. Hobbs— no price indicated | |
| 2400 shs. | Bankers Dispatch from Mrs. Hobbs— no price indicated | |

——◆——

During 1963–64 Bear, Stearns & Co. received no dividends or interest payments and held no securities for any of its Delaware accounts. It did, however, mail to five of its Delaware accounts prospectuses, as required by law, concerning ten bond issues in connection with purchases of the bonds by the Delaware customers.

There is no evidence that any prospectuses, securities, or funds were mailed by Bear, Stearns & Co. to its Delaware customers prior to August 8, 1963, when this suit was filed. Nor is there proof that Delaware customers mailed securities or funds to Bear, Stearns & Co. before that date. The interrogatories asked about transactions during 1963–64. The answer does not break down the transactions between the two years. All of the interstate mailings between Bear, Stearns & Co. and its Delaware customers could have taken place shortly before May 20, 1964 when the answers were filed.

When a venue defense is asserted, the burden rests upon the plaintiff to support the venue. Bruner v. Republic Acceptance Corp., 191 F.Supp. 200, 203 (E.D.Ark.1961); Wentling v. Popular Science Publishing Co., 176 F.Supp. 652, 656 (M.D.Pa.1959); Pfeiffer v. United Booking Office, 93 F.Supp. 363, 365 (N.D.Ill.1950). Since plaintiff has failed to prove that prior to the beginning of the action, Bear, Stearns & Co. sent or received securities or funds to or from its Delaware customers, or that it sent prospectuses to them, such activities are not relevant to the venue issue. Business activities which have terminated before the institution of an action will not support venue under the "transacts business" clause of the Clayton Act, or "doing business" clause of 28 U.S.C. § 1391(c). Sunbury Wire Rope Manufacturing Co. v. United States Steel Corp., 230 F.2d 511, 512 (3rd Cir. 1956); Gem Corrugated Box Corp. v. Mead Corp., 189 F.Supp. 584, 586 (S.D.N.Y. 1960); Schreiber v. Loew's, Inc., 147 F.Supp. 319, 324 (W.D.Mich.1957). See 1 Moore, Federal Practice, p. 1494 (2nd Ed.1961).[7] With at least equal logic, no

7. A few cases have indicated that suit is proper if the defendant was transacting business in the challenged district when the wrong occurred and the cause of action arose out of that business, even though such business was terminated prior to suit. L'Heureux v. Central American Airways Flying Service, Inc., 209 F.Supp. 713 (D.Md.1962); Coulter Funeral Home, Inc. v. National Burial Ins. Co., 192 F.Supp. 522 (E.D.Tenn. 1960); Ross-Bart Port Theatre, Inc. v.

type of business activity has venue significance under § 27 of the Securities Act when it began after the suit was instituted.

During 1963–64 partners or employees of Bear, Stearns & Co. made four visits to Delaware for the purpose of obtaining information from companies in order to evaluate the securities of the companies as investments. Only two of these visits were made before suit was instituted; one was made in 1963 after suit was started, and one occurred in 1964. During none of these visits was any attempt made to solicit business.

During 1963–64, partners or employees of Bear, Stearns & Co. called on five institutional investors in Delaware who had accounts with it. Each was in the nature of a goodwill visit designed to acquaint the institution with the representative who made the call. Only one visit was made before suit was begun, two were made at the end of 1963, and two were made in the first quarter of 1964. No securities were delivered or received at the time of such visits, nor were any orders for the purchase or sale of securities ever given by any of the institutions called upon.

The contacts which Bear, Stearns & Co. had with Delaware at the time when suit was begun are lacking in that degree of substantiality or continuity which meets "[t]he practical, everyday business or commercial concept of doing or carrying on business 'of [a] substantial character'". United States v. Scophony Corporation of America, 333 U.S. 795, 807, 68 S.Ct. 855, 862 (1948).

Venue under § 27 was lacking as to Bear, Stearns & Co.

■ 3. *The defendants, the partners in their individual, as distinct from partnership, capacity.* The fact that de-

fendants Crosby, Kohlberg, Lewis, Lillis, Low, Mayer,[8] Patten, Shea, and Wahrsager were either directors or officers of corporations incorporated under Delaware law does not, standing alone, establish that in their individual capacity they were transacting business in Delaware. Moreover, no venue significance is to be attached to the fact that defendant Lillis attended one stockholders' meeting in Delaware in 1963 and one in 1964. Other arguments by plaintiff directed against the motion of the individual defendants are identical with those previously rejected in discussing the motions of Bear, Stearns & Co. and Thomas, and further comment about them is not required.

## D. ATTACHMENTS

■ The defendants' motions attack the attachment of the following shares of Nuclear stock owned by the defendants indicated:

David A. Thomas—25,000 shares
Bear, Stearns & Co.—1,081,435 shares
Joseph Crosby—110 shares

While Fed.R.Civ.P. 4(e) makes attachment process authorized by state law available in a federal court, it has not eliminated the ordinary requirements of federal venue. Advisory Committee's Note to proposed 1963 Amendment to Rule 4(e), 31 F.R.D. 628; 1 Barron & Holtzoff, Federal Practice and Procedure, § 183 (1963 Supp.); 2 Moore, Federal Practice, pp. 1236–37 (1962 ed.). This was conceded at the argument by plaintiff's attorney. The absence of venue as to the first cause of action, without more, requires a vacation of the attachments as to that cause of action.

But even if venue were properly laid in this District as to the first cause of action, the defendants assert that the attachments would still have to be va-

---

Eagle Lion Films, Inc., 140 F.Supp. 401 (E.D.Va.1954). These decisions are irrelevant in the instant case since here there is no suggestion that Bear, Stearns & Co. was transacting business in Delaware at any time prior to 1963. The latest date relevant to the alleged wrong

is 1962 when the Semcor contract was breached. (par. 12 Complaint).

8. The Complaint names "Mayer" as a defendant. The Defendants' Answers To Interrogatories refer to a "Mayer, *Jr.*" It is assumed that these are identical persons.

cated. Their argument raises the novel and interesting question whether under either Delaware or federal law the property of a non-resident individual defendant may be validly attached under 10 Del. C. § 3506, as amended, in an action to enforce a federally created right such as the present one, when the statute creating the right authorizes, as does § 27 of the Securities Act, *in personam* service in any district where the defendant is an inhabitant or may be found.

Rule 4(e) (italics by the Court) reads:

"Whenever a statute of the United States * * * provides for service of summons * * * upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute * * *, *or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule.* Whenever a statute * * * of the state in which the district court is held provides * * * (2) for service upon * * * [a party not an inhabitant of or found within the state] to appear and respond or defend in an action by reason of the attachment * * * of his property located within the state, service may * * * be made under the circumstances and in the manner prescribed in the statute * * *."

Defendants contend that state attachment can be availed of only if there is no federal "long arm" service provision such as § 27, and point to the italicized portion of the Rule to support their argument. But the language of the Rule is not susceptible to the interpretation which defendants place on it. It says that if there is a federal "long arm" statute which contains *within itself* the manner of service, then service "may be made under the circumstances and in the manner prescribed by the statute"; but if the federal statute which authorizes the service does not *itself* provide for the "manner" of service, then the service is to be made "in a manner stated in this rule".

■ The word "manner" and the phrase "manner of service" mean the mechanical way by which federally authorized service can be made; it refers to the steps which must be physically taken by the serving officer to make the service valid. To illustrate, the "lien enforcement; absent defendants" statute, 28 U.S.C. § 1655, describes the steps to be taken to effectuate a valid service. Accordingly, Rule 4(e) permits service to be made in a proceeding under § 1655 as that section provides. On the other hand, the "interpleader statute", 28 U.S.C. § 2361, makes no provision for the type of action to be taken to effectuate service. In this situation Rule 4(e) requires that service be made "in a manner stated in this rule", which would, of course, include the various methods specified in Rule 4(d). Reasonably interpreted, this is what the italicized words in Rule 4(e) mean.

■ It follows, then, that where the circumstances are such as to make applicable both a federal statute authorizing "long arm" service (regardless of whether it specifies the "manner" in which the service is to be made) and a state foreign attachment law, a plaintiff has the option of making service either under the federal statute or under the state law. This is not only discernible from the language of Rule 4(e) but it is the interpretation placed upon the Rule by the Advisory Committee when the 1963 Amendments were submitted to the Supreme Court for adoption. Advisory Committee's Note to Rule 4(e), as presently amended. 31 F.R.D 629. These notes set forth "[t]he background and the purposes of the amendments." Letter of transmittal dated September 21, 1962 from the Director of the Administrative Office to the Supreme Court. 31 F.R.D. 623.

The question remains whether the attachment is valid under the laws of Delaware.

The property of the defendants was attached under 10 Del.C. § 3506, as amended by 52 Del.Laws, Ch. 341 (1960), which reads:

"A writ of foreign attachment may issue against any individual not an inhabitant of this State on any cause of action after proof satisfactory to the Court that the defendant cannot be found, that the defendant resides out of the State, and that plaintiff has a good cause of action against the defendant in a sum exceeding $50."

An affidavit conformable to the statute was filed, and upon the basis of its representation that the defendants could not be found and resided out of the state, the writ was issued and the property attached. The owners were all non-residents.

The history of the law leads to the conclusion that if a non-resident individual defendant is subject to *in personam* service, it was not intended that foreign attachment should be utilized against him, at least if he is amenable to service within the state.

The first foreign attachment law applicable to what is now the state of Delaware was enacted in Colonial times when the counties of New Castle, Kent and Sussex were part of the province of Pennsylvania. 1 Del.Laws, Ch. CC.a., pp. 467–468 (1770). It provided among other things that no writ of foreign attachment could be issued against "persons residing out of this government" unless (1) a writ was delivered to the sheriff or coroner and was returned "non est inventus", or (2) an affidavit was filed stating that the defendant "avoids coming into this government lest he or she be taken to answer his or her just debts". *Under this law a writ of foreign attachment could not be obtained solely because a defendant was a non-resident.* A showing was also required that he could not be found or was intentionally staying out of the jurisdiction to escape answering for his debts.

In 1823 a supplement to the Act of 1770 was enacted. 6 Del.Laws, Ch. CLXII, § 1, pp. 261–262 (1823). This had the effect of permitting a writ of foreign attachment to issue against a non-resident individual defendant upon proof that (1) the defendant was a non-resident, *or* (2) a writ had been delivered to the sheriff or coroner and had been returned "non est inventus". Subject to changes not presently important, the law continued in this form until amended in 1960.[9] *Thus, from 1823 until 1960, a writ of foreign attachment could be procured simply by averring the non-residence of an individual defendant.* The alternative statutory method of having a writ of summons issued and returned "defendant cannot be found" as a means of obtaining a writ of foreign attachment, was seldom used. 2 Woolley, Delaware Practice, § 1269, p. 863. Because of the wording of the statute, the amenability of a nonresident individual defendant to *in personam* service did not prevent the seizure of his property under a writ of foreign attachment. Burcalow v. Trump, 1 Houst. 363, 6 Del. 363 (1856); 2 Woolley, Delaware Practice, § 1274(b), p. 866. Under the 1960 amendment, this is no longer true. Since its enactment, a writ of foreign attachment cannot be obtained unless there is proof that a defendant is a non-resident *and* that he "cannot be found".

This statute which is applicable to an individual defendant contrasts sharply with the statute which authorizes foreign attachment against a corporation. The latter at all times since its initial en-

---

9. The Act of 1770, as supplemented by the Act of 1823, was embodied in Section 2290 of the Code of 1852, Ch. 104, § 19, except that the return requirement of "non est inventus" was changed to read "defendant cannot be found". 16 Del. Laws, Ch. 533, § 1 (1881) amended § 2290 of the Code of 1852 by adding a paragraph, not presently important, dealing with multiple defendants. Section 4142 of the Rev.Code of 1915 and § 4630 of the Rev.Code of 1935 embody the provisions of § 2290 of the Code of 1852, as amended in 1881.

actment has only required proof that a corporate defendant is not organized or existing under the laws of Delaware. 11 Del.Laws, Ch. 426 (1857); 15 Del. Laws, Ch. 181 (1875); 15 Del.Laws, Ch. 182, §§ 1–3 (1875); Code 1915 § 4143; 10 Del.C. § 3507(a) as amended, 52 Del. Laws, Ch. 341 (1960). The view has been expressed, and with complete logic in view of the wording of the statute, that the writ may be obtained against a foreign corporation even when it is doing business in Delaware and has appointed a statutory agent upon whom service by summons may be made. 2 Woolley, Delaware Practice, § 1274(b), p. 866. It may be that as a matter of policy, there is today no justification for the distinction between the foreign attachment law as it applies to an individual and to a corporate defendant. Nevertheless, the difference in the language of the two statutes compels that the difference be recognized.

The purpose of the 1960 amendment, as it applies to a non-resident individual defendant, is not difficult to discern. Foreign attachment is not a form of action; it is process. 2 Woolley, Delaware Practice, § 1278, p. 869. Its purpose is to coerce a non-resident who owns property within the state to submit himself to personal jurisdiction upon pain of forfeiture of his seized property. Canaday v. Superior Court, etc., 10 Terry 456, 49 Del. 456, 461, 119 A.2d 347, 350 (1955). See also Brown v. Consolidated Fisheries Co., 17 F.R.D. 86, 88 (D.Del. 1954) where Judge Rodney said "[t]he entire attachment proceedings, domestic and foreign, are primarily framed for the purpose of compelling appearance of the defendant."

Since foreign attachment permits the seizure of a defendant's property before any violation of a plaintiff's rights has been established, it may readily lend itself to abuses. Blaustein v. Standard Oil Co., 4 Terry 449, 43 Del. 449, 458, 49 A.2d 726, 729 (1946). If a defendant can be found so as to be served personally, resort to foreign attachment to compel his appearance is unnecessary, and

being as it is susceptible to abuses, should not be countenanced. The 1960 amendment to § 3506 was presumably enacted in the light of these considerations. It obviously operates to safeguard the property of a non-resident individual defendant from attachment when he is subject to *in personam* service within the state.

Whether the Delaware legislature intended that § 3506, as amended, should preclude the use of foreign attachment against a non-resident individual defendant who is subject to personal service outside the state, is the precise question for determination. No Delaware state court has resolved it. Indeed, the question in its immediate posture could never arise in the state court, for under § 27 of the Securities Act the federal courts are given exclusive jurisdiction over violations of the Act. The fact that the Delaware legislature may not have had in mind a case comparable to the instant one when it amended § 3506 requires this Court to guess what it would have intended if the point had been specifically considered. Cf. Dann v. Studebaker-Packard Corp., 288 F.2d 201, 212–213 (6th Cir. 1961). And, despite the anomaly of its doing so, this Court must determine how a Delaware state court would interpret the statute if the instant case could arise in the state court. Cf. Banana Distributors, Inc. v. United Fruit Co., 269 F.2d 790, 794 (2nd Cir. 1959).

When § 3506 requires an affidavit that a non-resident defendant "cannot be found" as a condition to the issuance of a writ of foreign attachment, it does not add the limitation "within the state of Delaware". Reason militates against implying any such restrictive interpretation. The same policy which precludes the use of foreign attachment against a non-resident individual who can be served with summons within the state, likewise requires that he be protected against the attachment of his property if he is subject to *in personam* service outside of the state.

Even if § 3506 contained language which implied that the words "cannot be found" related only to an inability to find a defendant within the state, decisional justification exists in both the Delaware and the federal courts for honoring the policy of the statute rather than its suppositious implications. In Klein v. Lionel Corp., 130 F.Supp. 725 (D.Del.1955), it was held that 10 Del.C. § 8116,[10] which tolls the statute of limitations when a defendant is absent from the state, had no application to a non-resident defendant which had been sued for violation of the Robinson Patman Act, 15 U.S.C. § 13. This was because the defendant was subject to "long arm" service under the federal anti-trust laws. This was likewise the conclusion reached in Banana Distributors, Inc. v. United Fruit Company, supra, where in a Clayton Act case the Court interpreted a Connecticut tolling statute as being ineffective to extend the period of a Connecticut statute of limitations as to a non-resident defendant, in spite of the fact that the tolling statute stated in express terms that the time when a defendant was "without the state" should be excluded in computing the period of limitations. The Court said: "[c]ertainly we cannot see that any discernible policy of the Connecticut tolling statute or of the state would be furthered by holding otherwise." (269 F.2d p. 794) [11]

In Hurwitch v. Adams, 2 Storey 13, 52 Del. 13, 151 A.2d 286 (Super.Ct.1959),

a non-resident who had been involved in an automobile accident in Delaware was sued in Delaware and served by substituted service upon the Secretary of State under the Non-Resident Motorist Act, 10 Del.C. § 3112. When defendant pleaded the statute of limitations, plaintiff argued that it had been tolled by 10 Del.C. § 8116. The Court stated that a literal reading of § 8116 supported plaintiff's contention (151 A.2d p. 288). The Court said, however, that "the obvious purpose and the only purpose of section 8116 was to allow reasonably diligent plaintiffs the statutory period within which to obtain service upon an absent * * * defendant * * *" (151 A.2d p. 288). Since substituted service was available during the defendant's absence from the state, the Court held that the statute should not be construed to toll the period of limitation. The decision was affirmed in Hurwitch v. Adams, 2 Storey 247, 52 Del. 247, 155 A.2d 591 (1959), and one of the authorities relied upon to support the decision was Klein v. Lionel Corp., supra.

 Were the impossible to occur and the present question be presented to a Delaware court for decision, it is reasonable to believe that it would interpret § 3506 to mean that foreign attachment could not be availed of in the instant case since all of the non-resident defendants are subject to service by summons, albeit outside the state. This conclusion makes it unnecessary to consider wheth-

10. § 8116 states:

"If at the time when a cause of action accrues against any person, he is out of the State, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, he may be served with process. If, after a cause of action shall have accrued against any person, he departs from and resides or remains out of the State, the time of his absence until he shall have returned into the State in the manner provided in this section, shall not be taken as any part of the time limited for the commencement of the action."

11. The Court also said that even if a Connecticut court would hold that the Connecticut statute of limitations was tolled, despite the amenability of the non-resident defendant to service outside the state, it [the Court of Appeals] would hold "as a matter of federal law that in a suit to enforce a federal claim, the existence of a federal statute rendering the defendant subject to suit in Connecticut precludes the adoption of state service of process rules to determine whether the defendant was without the state within the meaning of a state tolling statute. (Citing cases)". (269 F.2d p. 794.)

er, if § 3506 were interpreted to authorize foreign attachment against a non-resident individual defendant who is subject to personal service outside the state, some federal policy would preclude its use in an action to enforce a federally created right. See Banana Distributors, Inc. v. United Fruit Co., 269 F.2d 790, 794 (2nd Cir. 1959), quoted in footnote 11, supra.

No question has been raised whether § 3506 authorizes the attachment of property in Delaware owned by a limited partnership organized under New York law whose members are non-residents of Delaware. This opinion has assumed, without deciding, that § 3506 could be so utilized were it not for the availability of the partnership to personal service under § 27 of the Securities Act.

### E. DISPOSITION OF THE CASE

The second and third causes of action will be dismissed because of lack of subject matter jurisdiction.

Although venue is lacking as to the first cause of action with respect to all defendants except Nuclear and Martin, that cause of action will not be immediately dismissed as to the other defendants. This is because plaintiff has requested that if the venue issue should be resolved against it, the action be transferred to the Southern District of New York, pursuant to 28 U.S.C. § 1406(a). Before acting upon this request, the attorneys for the parties will be given an opportunity to be heard. They should arrange a brief schedule between themselves and advise the Court of their agreement in this regard.

All attachments will be vacated.

In view of the plaintiff's request to transfer the case, no significance will be presently attached to the absence of personal jurisdiction over the defendants other than Nuclear and Martin.

Defendants should prepare an order consistent with this opinion, have it approved as to form by plaintiff, and submit it to the Court.