**JOHN I. PAULDING, Inc., v. LEVITON et al.**

**No. 137.**

Circuit Court of Appeals, Second Circuit.

Nov. 3, 1930.

Gifford, Scull & Burgess, Livingston Gifford, Newton A. Burgess, and Chas. W. Mortimer, all of New York City, for appellants.

Francis J. V. Dakin, of Boston, Mass., and Manasseh Miller, of Brooklyn, N. Y., for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The patent discloses a socket for inclosing the switch mechanism of an electric lamp. It consists of two parts, cap and shell, and is of the so-called "universal" type; that is, in assembling the parts, the end of the shell may be inserted within the cap in twenty different circumferential positions, in any of which the two parts will lock together to prevent longitudinal separation or rotary movement of the shell within the cap. Separation longitudinally is avoided by providing the cap with a series of inwardly extending projections adapted to latch under outwardly extending projections on the shell. Relative rotary movement is avoided by providing the projections on the cap with inclined shoulders parallel to the longitudinal axis of the cap and adapted to nest against the shoulders of longitudinal corrugations on the end of the shell. Sockets of the universal type which accomplished both these objects were old in the art. What Johnson did related only to a change in the form of the locking devices, resulting, as he asserts, in greater strength, improvement in appearance, and economy in manufacture.

In his preferred form, the projections of the cap are formed by making a series of twenty short cuts equally spaced around the flange of the cap and parallel with its edge, the metal below each cut being pressed inwardly to form a projection of which the upper end is a cut edge and the sides are inclined shoulders parallel with the longitudinal axis of the cap. The end of the shell has corresponding longitudinal corrugations into which the projections on the cap will nest when the cap and shell are assembled. In the depressed portion of one or more corrugations adjacent to one side of the key slot of the shell there is an outwardly extending projection having a cut edge on its lower end, and a similar projection or projections are pressed out on the opposite side of the shell. When the cap and shell are assembled, the cut end of a projection on the cap will latch under the ends of the projections on the shell to prevent longitudinal separation. The angular shoulders of the projections on the cap rest against the angular shoulders of the corrugations on the shell, and friction tends to prevent rotary movement of the shell within the cap. Friction does not absolutely prevent relative rotary movement, since it was demonstrated that by a sufficient torque the shell will be deformed so that the shoulders of the projections on the cap will ride up over the shoulders of the corrugations of the shell; but for practical purposes relative rotary movement may be said to be prevented, for the socket is able to withstand the torsional stresses to which it is subjected in customary use.

The first three claims are directed solely to the form of the cap. Claim 1 is the broadest, and reads as follows:

"1. An electric socket cap having a plain annular imperforate flange provided with a series of closely associated equally spaced inwardly extending locking projections having shoulder portions parallel with the longitudinal axis of the cap."

Claim 2 limits the form of the cap as follows:

"2. An electric socket cap having a plain annular imperforate flange provided with a series of equally spaced cuts around the same, portions of the flange adjoining said cuts extending inwardly to constitute locking projections having shoulder portions parallel to the longitudinal axis of the cap."

Claim 3 requires the cuts to be parallel to the edge of the flange, as in the preferred form above described.

Claim 4 covers the combination of the Johnson cap as set forth in claim 1 with the old "universal" type of corrugated shell.

The defendants not only deny the validity of the patent in suit, but assert that in any event their sockets do not infringe. In the view of this court, it will be necessary to consider only the second contention.

The defendants' cap appears to the unaided eye practically identical with the plaintiff's, but the testimony is that the series of incisions in the flange are rectangular, cutting the metal not only at the end, but also along a portion of each side of the inwardly extending projections. The metal below the incision, being pressed inward, forms a tongue having a cut edge at the sides as well as the end. While the method of latching against longitudinal separation is admitted to be the same as in the socket of the patent in suit, the method of preventing relative rotary movement is claimed to be very different. Instead of relying upon friction between the shoulders of the cap projections and the corrugations of the shell, the defendants cause the cut metal edges of two tongues, which lodge within the key slot of the shell when the two parts are in assembled position, to bear against the edges of the key slot, thereby making a positive lock against rotation of the shell within the cap in either direction—one which will yield to torsion only when the stress is sufficient to shear off the tongue. It is the contention of the defendants that, because of the file wrapper history of the patent in suit, the plaintiff is precluded from claiming that the caps alleged to infringe have an "imperforate flange" or "projections having shoulder portions" of the sort described in the patent. This requires a consideration of the file wrapper—a matter not dealt with in the opinion below.

Johnson's original application referred to the projections on the cap as "tongues." The claims were all for the combination of shell and cap, and claim 3 may be selected as illustrative. It read as follows:

"In an electric lamp socket the combination of a shell having its end provided with longitudinal inwardly projecting corrugations around its entire circumference, the intermediate portion between said corrugations having abrupt angular shoulders, a cap having its flange provided with a plurality of inwardly pressed tongues corresponding in number to the number of corrugations on said shell, the sides of said tongues being adapted to engage the abrupt shoulders on said intermediate portions when said socket is assembled to prevent relative rotary movement and means on said shell for engaging said tongues to lock said parts together."

All the claims were rejected on Limont No. 1,325,875 and Goodridge No. 872,283. These patents showed rectangular openings or "windows" in the corrugations of the flange of the cap into which projections in corrugations of the shell would enter, thus latching the two parts in assembled position. Thereupon Johnson filed an amendment in which he substituted new claims, changed the word "tongue" to "projection" throughout the specifications, and added a paragraph explaining that his flange was "imperforate" and was not weakened by making a series of short cuts around the lower portion of the flange and "then indenting the material adjoining each cut between the cut and the edge of the cap to form an inwardly extending projection, the cut end of which serves as a locking shoulder." The new claims were identical with those finally allowed, except that they lacked the phrase, "having shoulder portions parallel with the longitudinal axis of the cap." This phrase was inserted to meet a second rejection based on Benjamin No. 1,247,492, which showed, in the opinion of the Examiner, "an imperforate flange with a series of inwardly extending locking projections exactly as claimed by the applicant." Figures 7 and 12 of Benjamin's drawings show projections formed by indenting the metal between two vertical slits in the flange, thus giving the projections cut edges along their sides. Hence, it is contended that the

added element of "shoulder portions" cannot mean shoulders with cut edges.

In the light of this Patent Office history, it seems to us clear that the patentee must be confined to the "preferred form" of his specifications; that is, to a flange which is "imperforate" within the limited definition he has given the word, and to projections which are not "tongues" and do not have cut edges on their sides but have "shoulder portions" of inclined walls of metal. Limitations introduced by amendment to avoid rejection on the prior art must be strictly construed against the inventor. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 5 S. Ct. 1021, 29 L. Ed. 67.

It is argued by plaintiff that the commercial success of their patented product shows the merit of the invention and entitles it to a fair range of equivalents. But the commercial success may well be explained by the fact that plaintiff markets a universal type of socket at a price 10 to 20 per cent. cheaper than the "New Wrinkle" socket which prior to the advent of plaintiff and defendants into the field had enjoyed an undisputed monopoly in that type. Moreover, however meritorious the invention, the patentee cannot claim as an equivalent something which he relinquished in order to secure his patent. Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 65 L. Ed. 1162; I. T. S. Co. v. Essex Co., 272 U. S. 429, 443, 47 S. Ct. 136, 71 L. Ed. 335. Having abandoned his original claim 3, he cannot now contend that the claims allowed cover projections having tongues the sides of which are adapted to engage the abrupt shoulders on the corrugations of the shell to prevent relative rotary movement; but this he must contend to establish infringement by defendants. It is true that the vertical cuts along the edges of the tongue are so small as to make defendants' caps almost indistinguishable from plaintiff's. This is due to the thinness of the metal and the lack of any necessity to make the tongues longer in order to accomplish defendants' object of having their sides lock against the edges of the key slot. The length of the vertical cuts shown in Benjamin may have been no greater than in defendants' cap. We think the file wrapper history estops plaintiff to claim any vertical cuts, however minute, provided they are sufficient in length to produce a tongue with cut edges rather than a projection with inclined shoulders. Besides, as the microphotographs show, the cut edges of the tongues do not contact with the shoulders of the shell to prevent by fric-

tion relative rotary movement. This result is achieved by the operation of a different principle, namely, the positive locking of the cut edge of the tongue against the cut edge of the key slot. Consequently, assuming the patent to be valid, there was no infringement.

Accordingly, the decree must be and is reversed.