### WINDSOR THEATRE CO. v. LOEW'S Inc., et al.
### Civil Action No. 614.

United States District Court
District of Columbia.
June 8, 1948.

---

[7] See stipulation of facts, paragraphs 7 to 17, inclusive.

[8] Act No. 89, Pub.Acts Mich.1933, Comp.Laws Supp.1940, § 290-1 et seq., Stat.Ann. § 27.1291 et seq.

[9] This section is quoted in footnote 2.

872

Harold L. Schilz, of Washington, D. C., for plaintiff.

William E. Leahy, William J. Hughes, Jr., Edmund L. Jones, Donald Russell, and Miller, Sher & Oppenheimer, all of Washington, D. C., for defendants.

LAWS, Chief Justice.

Plaintiff brought this action under the provisions of the Sherman and Clayton Acts,[1] to recover treble the amount of damages allegedly sustained and to enjoin certain alleged violations of the above-named Acts. The Walbrook Amusement Company and the Hilton Theatre Company, corporate defendants, moved to dismiss the complaint or in lieu thereof to quash the service of process on the grounds that they are not inhabitants of the District of Columbia, that they were not found in, and that they do not transact business in the District of Columbia. Defendant corporations operate two theatres in Baltimore, Maryland, receiving their films from the six distributor defendants located in the District of Columbia.

Plaintiff does not contend that these defendants are inhabitants of or that they are to be "found" in the District of Columbia. However, it is urged they are transacting business in the District of Columbia and can be sued in this District by reason of the provision of the Clayton Act[2] which provides: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

The question raised requires a determination of whether the acts done by defendants in the District of Columbia are sufficient to sustain a finding that they were "transacting business" in this District. From the facts as I have found them, the general manager of defendants regularly visits the distributors' exchanges in the District of Columbia for the purpose of "booking" the films for which contracts have been made. Such visits occur once a week and last for a period of approximately two hours. "Booking" consists of setting a specific play date and theatre for the exhibition of films which have been contracted for in the agreement to license. The sequence of events leading up to the time that a picture is booked by the general manager of these defendants are as follows: First, a salesman of the distributor defendants calls on the general manager of the exhibitor defendants in Baltimore, Maryland, where he negotiates an Agreement to License a certain film. This agreement to license becomes a contract only when it has been finally approved in the distributor's New York office. Some of the agreements leave the general manager several options which he must exercise when he "books" the films, while in others every detail is settled. Second, when the film is available for release the distributor in the District of Columbia mails a notice of availability to the exhibitor in Baltimore, who then comes to the District of Columbia and books the film. Generally, the following action is done in the District: a specific play date is selected for the showing of the film; it is decided whether the film will be shown on a preferred playing date, i. e., Saturday or Sunday; it is decided whether a film will run for three or four days; and it is decided whether the film will be exhibited in the Walbrook or the Hilton Theatres. It does not appear

---

[1] Title 15 U.S.C.A. § 1 et seq.

[2] Title 15 U.S.C.A. Sec. 22.

that there are any negotiations with regard to these matters. The general manager merely advises the Booker of the choice he has made.

In addition to booking pictures, occasionally other matters have been discussed by defendants' general manager in the District of Columbia. At times when one of the two defendant theatres has been without a film to be exhibited on a particular date, the general manager has come to the District of Columbia to "spot book" a film. This spot booking has occurred only on infrequent occasions. Moreover, the general manager of defendant theatres has secured or attempted to secure credits and adjustments in rates when a film has not earned the anticipated amount of return. Some of these requests for credits took place in the District of Columbia, while others were conducted by telephone and correspondence through the mails. They were infrequent and not in any sense continuous.

The quantum of business which must be transacted by a corporation in a district, in order to make it possible to establish venue of an action under the antitrust acts, is less than the "doing business" necessary to sustain the service of process in other cases. Eastman Kodak Co. v. Southern Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; United States v. Scophony Corporation of America, 333 U.S. 795, 68 S.Ct. 855. However, the acts relied on to constitute transacting business must constitute a substantial part of the ordinary business of the corporation and must be continuous or at least of some duration. Westor Theatres, Inc., et al. v. Warner Bros. Pictures, Inc., et al., D.C. N.J., 41 F.Supp. 757.

The case at bar is similar to Hartford Theatre Co. v. Twentieth-Century-Fox Corp. et al., C.A. 34670 (D.C.) [1] and Commonwealth Amusement Enterprises, Inc., v. Colonial Theatres Company, Inc., et al., 79 F.Supp. 763, in which motions to quash service were granted by this Court and by the District Court of the United States for the District of Massachusetts. It is true in the case at bar, there were additional acts performed by the general manager of defendant theatres which did not appear in the Hartford Theatre and Commonwealth Amusement cases, namely, spot-booking and requests for adjustments and credits. As to these activities, however, the evidence clearly indicates that they were done only occasionally and there was not the continuity necessary to sustain a finding that defendants were transacting a substantial part of their ordinary business in this jurisdiction. These transactions can not be termed "ordinary business"; they were exceptional and occasioned only by unforeseeable events.

The only act of defendant's representative repeatedly and continuously performed in this jurisdiction was booking. This act was relied on in both the Hartford and the Commonwealth Amusement cases, supra, and in both cases it was held that booking was not sufficient to bring the corporation within the transacting business clause of the Clayton Act. In my opinion the decisions in these cases are correct and should be followed. The decisions relied on by plaintiff in support of its position were decided on different states of facts and are not controlling on the question raised in the case at bar.

Accordingly, service of process will be quashed.

Findings of fact and conclusions of law are filed with this opinion.

---

[1] No opinion for publication.