ATHLETES FOOT OF DELAWARE, INC., a Delaware Corporation, Sport Shoe of Newark, Inc., a Delaware Corporation, Harold Jarin, Gerald S. Jarin, Alvin Meizell and Morton H. Goldberg, Plaintiffs,

v.

RALPH LIBONATI CO., INC., a New Jersey Corporation, Libco, Inc., a New Jersey Corporation, Ralph Libonati, Athletes Foot Marketing Associates, Inc., a Pennsylvania Corporation, and Robert N. Lando, Adidas Corporation, a corporation of the Federal Republic of Germany and Gerald M. Cavall, t/a Girard Sporting Goods, Defendants.

Civ. A. No. 76–386.

United States District Court,
D. Delaware.

Nov. 28, 1977.

David Roeberg of Roeberg & Agostini, Wilmington, Del., for plaintiffs.

E. Dickinson Griffenberg, Jr. of Potter, Anderson & Corroon, Wilmington, Del., and Rose, Schmidt, Dixon, Hasley & Whyte, Pittsburgh, Pa., for defendants Athlete's Foot Marketing Associates, Inc. and Robert N. Lando.

Henry N. Herndon, Jr. and David H. Williams of Morris, James, Hitchens & Williams, Wilmington, Del., for defendants Ralph Libonati Company, Inc., Libco, Inc. and Ralph Libonati.

Edward J. Sobolewski, Jr., Newark, Del., for defendant Gerald M. Cavall, t/a Girard Sporting Goods.

## OPINION

LATCHUM, Chief Judge.

Two Delaware corporations, Athlete's Foot of Delaware, Inc. and Sport Shoe of Newark, Inc., and four individuals[1] identified only as stockholders, officers and directors of those corporations, have brought this private action[2] against the defendants for alleged violation of § 1 of the Sherman Act, 15 U.S.C. § 1. The complaint asserts that the defendants "combined and conspired among themselves" to restrain interstate trade or commerce and eliminate competition by restricting the sale or delivery of Adidas sport shoes to plaintiffs, all contrary to the Sherman Act's prohibition.[3] The complaint also charges that as a result of this combination or conspiracy, plaintiffs had to abandon plans to open a retail athletic footwear store and were thereby deprived of the opportunity to enjoy the profits they expected to derive from the operation of such a store.[4] Treble damages in the amount of $600,000, together with suit costs and reasonable attorneys fees, are sought under 15 U.S.C. § 15.[5]

The corporate defendants are: (1) Adidas Corporation, a corporation of the Federal Republic of Germany engaged in the manufacture of a popular athletic shoe and other apparel (hereinafter referred to as the "Adidas line") which it advertises and promotes throughout the United States;[6] (2) Athlete's Foot Marketing Associates, Inc. ("AFMA"), a Pennsylvania corporation whose principal activity is the franchising and promotion of its federally registered trademark ("THE ATHLETE'S FOOT") as a marketing concept in the sale of athletic footwear and other accessories through franchised retail stores;[7] (3) Ralph Libonati Company, Inc. ("RLCo"), a New Jersey corporation which serves as a sales representative in the northeastern states for manufacturers and distributors of athletic merchandise, including the Adidas line;[8] (4) Libco, Inc. ("Libco"), a New Jersey corporation which imports and distributes the Adidas line to retail stores in the northeast-

1. The individual plaintiffs are Harold Jarin, Gerald S. Jarin, Alvin Meizell and Morton Goldberg.

2. Jurisdiction is premised on 28 U.S.C. § 1337.

3. Docket Item 1, pars. 10, 11.

4. Id., pars. 12, 13.

5. Id., par. 14.

6. Adidas Corporation was not served with a summons or a copy of the complaint and has not appeared in this action.

7. Docket Item 15, Mark Lando Affidavit, pars. 5–11.

8. Docket Item 20, Lichtenberg Affidavit, pars. 2, 3, & 5, Docket Item 28, Interrogatory and Answer 6.

ern states.[9] The individual defendants are: (1) Robert N. Lando ("Lando"), a citizen and resident of Pennsylvania and the president of AFMA;[10] (2) Ralph Libonati ("Libonati"), a resident and citizen of New Jersey and the primary officer, director and stockholder of RLCo and Libco;[11] (3) Gerald M. Cavall ("Cavall"), a citizen and resident of Delaware who owns and operates Girard's Sporting Goods, a retail sporting goods store which sells athletic footwear and other accessories, including the Adidas line.[12]

The material allegations of the complaint can be summarized, and the factual background of the case set forth, as follows. Athlete's Foot of Delaware, Inc. and Sport Shoe of Newark, Inc. were organized for the purpose of owning and operating retail athletic footwear stores in northern Delaware.[13] Pursuant to a "license agreement" dated November 12, 1975, the plaintiffs were authorized by AFMA to use its "Athlete's Foot" trademark to identify retail athletic footwear stores which the plaintiffs intended to open in the area of New Castle County, Delaware.[14] In February, 1976, plaintiffs opened the first "Athlete's Foot" store in the Branmar Shopping Plaza on Marsh Road (the "Marsh Road Store"). Defendants RLCo and Libco supplied the Marsh Road store with the Adidas line according to its needs.[15] With the opening of the Marsh Road store, plaintiffs also decided to open a second "Athlete's Foot" store in the City of Newark, as authorized by the license agreement. After an unsuccessful attempt to obtain a store location in the Newark Shopping Center, the plaintiffs were able to lease premises on Main Street in Newark (the "Newark store").[16] The Newark store, however, was located less than three stores away from an existing retail athletic footwear store owned and operated by defendant Cavall. Like both the Marsh Road and proposed Newark store, Cavall's store is supplied by RLCo and Libco with the Adidas line.[17] The complaint then alleges that Cavall complained to Libonati, RLCo and Libco about the location of plaintiffs' Newark store; thereafter, Libonati, on behalf of RLCo and Libco, advised AFMA that the Adidas line would not be sold to plaintiffs at their proposed Newark store and that shipments to the Marsh Road store would also be terminated unless plaintiffs abandoned the plan to open the Newark store so near to Cavall.[18] Moreover, it is alleged that AFMA refused to allow plaintiffs to exhibit its trademark at the Newark store because Libonati threatened to suspend shipments of the Adidas line to other AFMA-franchised athletic footwear stores. It is further claimed that after Libonati advised plaintiffs not to open the Newark store, Libco and RLCo refused to sell or deliver the Adidas line to the plaintiffs' Marsh Road store for over nine months.[19] The plaintiffs subsequently filed this suit claiming that the defendants conspired and combined to restrain trade "by preventing shipment in interstate commerce of the Adidas line from [Libco] and [RLCo] in New Jersey" to plaintiffs' Newark and Marsh Road stores, all with the unlawful purpose of restricting or eliminating competition.[20]

In response to the complaint the defendants have filed a plethora of motions seeking its dismissal on grounds of lack of personal jurisdiction, improper venue, defective service of process and failure to state a

---

9. Docket Item 20, Patrone Affidavit, pars. 2, 3.

10. Docket Item 16, Robert Lando Affidavit, pars. 1, 5.

11. Docket Item 23, Ralph Libonati Affidavit, par. 2; Docket Item 1, par. 5.

12. Docket Item 1, par. 6.

13. *Id.*, par. 1.

14. *Id.*, par. 8.

15. *Id.*

16. *Id.*, par. 9.

17. *Id.*, par. 10.

18. *Id.*, par. 11(b).

19. *Id.*, par. 11(e).

20. *Id.*, par. 10.

claim upon which relief can be granted. In addition, several defendants have moved to have the individual plaintiffs dismissed from this action on the ground they lack standing to sue on an antitrust claim for injuries allegedly suffered by the *corporate* plaintiffs. The Court, having considered the oral and written arguments of opposing counsel, concludes that (1) service of process should be quashed and the complaint dismissed as to the individual defendants Lando and Libonati because the Court lacks in personam jurisdiction of them, (2) the complaint should also be dismissed as to the corporate defendant AFMA because venue is improperly laid in this district and the extraterritorial service of process effected upon it was defective, (3) venue properly lies in this district with respect to RLCo and Libco and the extraterritorial service of process effected upon them will be sustained, (4) the complaint adequately states a claim against the remaining defendants upon which relief can be granted, and (5) the individual plaintiffs will be dismissed from this action for lack of standing to sue on the claims alleged under the Sherman Act.

THE AFMA, RLCo AND LIBCO MOTIONS TO DISMISS FOR IMPROPER VENUE AND DEFECTIVE SERVICE OF PROCESS

AFMA, RLCo and Libco have filed motions to dismiss based on a myriad of grounds which can be reduced to one fundamental question: Whether or not venue of this antitrust action properly lies in this district? The determination of the propriety of venue here will also control another basic question raised by the defendants: Whether or not extraterritorial service of process was correctly effected upon them? [21]

■ To determine whether venue of this action properly lies within the District of Delaware primarily depends upon the construction and effect of § 12 of the Clayton Act, 15 U.S.C. § 22, which reads as follows:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Numerous authorities have stated that a corporation is considered an "inhabitant" of the state in which it is incorporated, *e. g., Aro Manufacturing Co. v. Automobile Body Research Corp.,* 352 F.2d 400 (C.A.1, 1965), *cert. denied,* 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966); *Grappone, Inc. v. Subaru of America, Inc.,* 403 F.Supp. 123 (D.N. H.1975); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252 (E.D.Pa.1968). AFMA, RLCo and Libco are not incorporated in Delaware.[22] Accordingly, they are not inhabitants here for venue purposes under § 12.

■ To be "found" in a district within the meaning of § 12 a corporation must have duly authorized "officers and agents carrying on the business of the corporation" within the district and "the nature and character of its business must be such as to warrant the inference that it is engaged in continuous local activity" there. *Eastman Kodak Co. of New York v. Southern Photo Materials Co.,* 273 U.S. 359, 371, 47 S.Ct. 400, 402, 71 L.Ed. 684 (1927); *Aro Manufacturing Co. v. Automobile Body Research Corp., supra,* 352 F.2d at 404; *Fox-Keller, Inc. v. Toyota Motor Sales, U. S. A., Inc.,* 338 F.Supp. 812, 815 (E.D.Pa.1972); *Stern Fish Co. v. Century Seafoods, Inc.,* 254 F.Supp. 151 (E.D.Pa.1966).

■ From the affidavits submitted on the motions it appears that AFMA, RLCo and Libco have no officers or personnel residing in Delaware to carry on their re-

---

**21.** *See* Docket Item 18, pp. 14–15; Docket Item 19, pp. 20–21.

**22.** Docket Item 15, par. 5; Docket Item 20, Lichtenberg Affidavit, par. 5, Patrone Affidavit, par. 2.

spective businesses[23] and, therefore, they cannot be considered "found" in this district. The plaintiffs, however, seem at one point to suggest that the AFMA franchising agreement, in effect, appoints the plaintiffs as AFMA's agent in Delaware. Thus, according to this argument, AFMA is "found" in this district because its agent is present and engaged in continuous local activity here.

This argument is wholly without merit. First, the franchise agreement expressly negates any intention of appointing or nominating plaintiffs as agents for the franchisor[24] and the unambiguous terms of that agreement are plainly inconsistent with the existence of an agency relationship.[25] The agreement does not extend to plaintiffs the power or authority, express or implied, to alter or affect AFMA's business or legal relations with third persons, which one would expect had AFMA intended to constitute plaintiffs its agent in Delaware. *See* Restatement of Agency 2d, ¶ 12 and comment a (1958). Second, assuming arguendo that the plaintiffs are agents of AFMA, there is no evidence of record that the plaintiffs are carrying on *AFMA's business* (the franchising of its registered trademark) as opposed to their own business (selling athletic footwear and other apparel). To be found in this district, the officers and agents must be present and "carrying on the business of the corporation" for which venue is sought. *Aro Manufacturing Co. v. Auto Body Research Corp., supra* at

404. Thus, absent any showing that plaintiffs are carrying on AFMA's business in this district, AFMA is not "found" here within the meaning of § 12 of the Clayton Act.[26]

The phrase "transacts business" as used in § 12 has been accorded a more liberal interpretation than the term "found" in order to effectuate the Congressional policy of enabling a person allegedly injured by violations of the antitrust laws to seek redress in his home district.[27] *United States v. Scophony Corp.*, 333 U.S. 795, 807, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). A corporation is transacting business in a district "if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." *Eastman Kodak Co. of New York v. Southern Photo Materials Co., supra,* 273 U.S. at 373, 47 S.Ct. at 403. Thus, fewer local contacts are necessary to find that a corporation is "transacting business" under § 12 than "doing business" under the former § 7 of the Sherman Act. *Id.; Hitt v. Nissan Motor Co. Ltd.*, 399 F.Supp. 838, 840 (S.D.Fla.1975), *citing United States v. Scophony Corp., supra* and *Friedman v. United States Trunk Co.*, 30 F.R.D. 148, 150 (S.D.N.Y.1962). The substantiality of business operations is to be determined from the viewpoint of the average businessman rather than the corporate giant to avoid the situation whereby a "large corporation could, with impunity, engage in the same act which would subject a smaller corporation to jurisdiction and ven-

23. Docket Item 20, Lichtenberg Affidavit (RLCo) pars. 5, 6; Patrone Affidavit (Libco) par. 2; Docket Item 15, Mark Lando Affidavit (AFMA) pars. 6, 9.

24. Docket Item 34, Ex. A, par. 14.

25. *Id.,* pars. 2, 3, and 12.

26. Plaintiffs' reliance on *Kenmore-Louis Theatre, Inc. v. Sack,* 192 F.Supp. 711 (D.Mass. 1961) is misplaced. In that case one of the defendants, a New York corporation, moved to dismiss an antitrust suit for lack of proper venue. The court denied the motion, holding that the defendant was found in the district of Massachusetts within the meaning of § 12 because its agent was present and carrying on the defendant corporation's business there. This conclusion, however, was based upon the

court's finding that the defendant had granted a local Massachusetts corporation broad authority to conduct the essential functions of the defendant's business. In fact, the defendant did a substantial amount of business in the district which was only made possible by the authorized efforts of its locally based agent. *Id.* at 712–13. No similar finding can be made in this case; the *Kenmore-Louis Theatre* case is therefore inapposite.

27. For a summary of the legislative history of § 12 see *United States v. National City Lines,* 334 U.S. 573, 582–88, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948); *Eastland Construction Co. Inc. v. Keasbey & Mattison Co.,* 358 F.2d 777, 780–81 (C.A.9, 1966).

ue." *Green v. United States Chewing Gum Mfg. Co.,* 224 F.2d 369, 372 (C.A.5, 1955); *Sunbury Wire Rope Mfg. Co. v. United States Steel Corp.,* 129 F.Supp. 425, 427 (E.D.Pa.1955). The general test for venue, therefore, is the practical everyday business or commercial concept of doing or carrying on business of any substantial character, *United States v. Scophony Corp., supra,* 333 U.S. at 807–08, 68 S.Ct. 855, and isolated, sporadic or miniscule contacts with the forum state are insufficient.[28] *Stern Fish Co. v. Century Seafoods, Inc., supra* at 153.

The plaintiffs contend that AFMA is transacting business here because of the control which it exercises over the essential business activities of the plaintiffs' Marsh Road store through the franchise agreement. To support this contention they rely upon those cases which stand for the proposition that a corporate defendant transacts business in a district when it exercises significant control or supervision over a related corporation, such as a subsidiary, which effectively conducts the business, or an integral part of the business, of the parent or defendant corporation. *See, e. g., United States v. Scophony Corp., supra; San Antonio Telephone Co., Inc. v. American Telephone & Telegraph Co.,* 499 F.2d 349, 352 (C.A.5, 1974); *Fiat Motor Co. v. Alabama Imported Cars, Inc.,* 110 U.S.App. D.C. 252, 254, 292 F.2d 745, 747, *cert. denied,* 368 U.S. 898, 82 S.Ct. 175, 7 L.Ed.2d 94 (1961); *Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corp.,* 46 F.2d 623, 625 (C.A.1, 1931); *Grappone, Inc. v. Subaru of America, Inc.,* 403 F.Supp. 123, 132 (D.N.H.1975); *Hitt v. Nissan Motor Co. Ltd.,* 399 F.Supp. 838, 842–43 (S.D.Fla.1975); *Call Carl, Inc. v. B. P. Oil Corp.,* 391 F.Supp. 367, 372–73 & n.4 (D.Md.1975), *aff'd in part, rev'd in part* 554 F.2d 623 (C.A.4, 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977); *Hoffman Motors Corp. v. Alfa Romeo,* 244 F.Supp. 70, 76 (S.D.N.Y.1965).

The plaintiffs, however, have not demonstrated that the franchise agreement authorizes AFMA to control and supervise the plaintiffs' retail business operations in Delaware in order to realize its own business objectives here. Nor is there any indication in the record that plaintiff Athlete's Foot of Delaware, Inc. is an instrumentality of AFMA, rather than merely its franchisee. Actually, the only notable contacts of AFMA with this district are the display and use of its trademark at the plaintiffs' Marsh Road store and its receipt of a $5,000 franchise fee and about $2,500 in royalties. However, the appearance of AFMA's trademark in this district is merely a form of advertising which, absent other substantial business activities, is insufficient to constitute transacting business in Delaware. *Williams v. Cannon, Inc.,* 432 F.Supp. 376, 380 (C.D.Cal.1977); *cf. San Antonio Telephone Co., Inc. v. American Telephone & Telegraph Co., supra; Albert Levine Associates v. Bertoni & Cotti,* 309 F.Supp. 456 (S.D.N.Y.1970). Moreover, the $5,000 franchise fee and the $2,500 in royalties, although derived from commerce generated in Delaware, are too tenuous a connection with this district to find that AFMA is transacting business of a substantial character here within the meaning of § 12 of the Clayton Act. *See Hydraulics Unlimited Mfg. Co. v. B/J Mfg. Co.,* 323 F.Supp. 996, 1000 (D.Colo.), *aff'd* 449 F.2d 775 (C.A.10, 1971); *Commonwealth Edison Co. v. Federal Pacific Elec. Co.,* 208 F.Supp. 936, 939 (N.D.Ill.1962). Venue in this district as to AFMA is therefore improper.

To circumvent this conclusion the plaintiffs maintain that venue in this district as to AFMA is proper under the terms of the general venue statute, 28 U.S.C. § 1391(b) or (c), which supplements the special antitrust venue provision of § 12. *See, e. g., Board of County Commissioners v. Wilshire Oil Co. of Texas,* 523

---

28. In relating the facts of this case to the governing law, it is important to remember that the Court is interpreting a venue statute, not resolving a constitutional objection to the assertion of jurisdiction.

*See also Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,* 331 F.Supp. 92 (C.D.Cal. 1971), *aff'd* 461 F.2d 1261 (C.A.9), *cert. denied,* 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221 (1972); *Pacific Tobacco Corp. v. American Tobacco Co.,* 338 F.Supp. 842, 844 (D.Or.1972).

F.2d 125, 129–30 & n.6 (C.A.10, 1975); *United States Dental Institute v. American Association of Orthodontists,* 396 F.Supp. 565, 573 (N.D.Ill.1975); C. Wright, *Law of Federal Courts* § 42 (3d ed. 1976).

28 U.S.C. § 1391(b) reads as follows:

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

In *Philadelphia Housing Authority v. American Radiator & Std. Sanitary Corp.,* 291 F.Supp. 252, 259–61 (E.D.Pa.1968), the court held that "where the claim arose" should depend upon where the contacts weigh most heavily:

"A 'weight of the contacts' test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district. Conversely, if one insignificant sale was made in a district . . . venue would not lie there. Similarly, if a meaningless and insignificant meeting of the conspirators took place in a certain district, venue would not exist there either."

There is no allegation that conspiratorial meetings, nor any overt act by AFMA in furtherance of the alleged conspiracy, occurred in this district. AFMA does not make substantial sales here [29] and the claim against it did not arise or grow out of transactions within Delaware.[30] Venue with respect to AFMA cannot be predicated on 28 U.S.C. § 1391(b).

28 U.S.C. § 1391(c) reads as follows:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

AFMA is neither incorporated nor licensed to do business in Delaware.[31] Furthermore, it is clear that "the concept of 'doing business' is narrower than 'transacting business', *i. e.,* it takes more activity to constitute 'doing business' than it does to meet the 'transacting business' test." *Philadelphia Housing Authority v. American Radiator & Std. Sanitary Corp., supra* at 257. As the Court indicated earlier, the activities of AFMA in this district are insufficient to constitute transacting business. It follows, therefore, that AFMA is not doing business in this district and venue cannot be predicated upon 28 U.S.C. § 1391(c).

Finally, although § 12 of the Clayton Act permits process in antitrust litigation against a corporation to be served "in the district of which it is an inhabitant, or wherever it may be found," service beyond state boundaries is authorized only when there is proper venue. *Call Carl, Inc. v. B. P. Oil Corp.,* 391 F.Supp. 367, 378 (D.Md.1975); *Friends of Animals, Inc. v. American Veterinary Medical Assn.,* 310 F.Supp. 620, 624 (S.D.N.Y.1970); *Public Service Co. of New Mexico v. Federal Pacific Elec. Co.,* 210 F.Supp. 1, 4 (D.N.Mex.

**29.** The record indicates that AFMA occasionally sells small items such as stationery and paper bags to the plaintiffs (Docket Item 15, par. 19), but even the plaintiffs do not suggest that these sales are significant.

**30.** The plaintiffs urge that the situs of an antitrust injury should be accorded special emphasis in the weight of the contacts calculus. In their view, since the injury in this case occurred in Delaware, the claim arose here and venue is proper under § 1391(b). Although that view might be acceptable in diversity tort cases in which a state rule holds that the claim arises where the injury occurs, it is overly simplistic in the context of federal antitrust actions where Congress still has an interest "in seeing to it that plaintiffs do not have virtually unlimited power to bring actions in any forum." *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., supra,* at 260–61. *See also California Clippers, Inc. v. United States Soccer Football Assn.,* 314 F.Supp. 1057, 1063 (N.D.Cal.1970); *ABC Great States, Inc. v. Globe Ticket Co.,* 310 F.Supp. 739, 742–43 (N.D.Ill.1970).

**31.** Docket Item 15, pars. 5, 8.

1962). Since venue in this district is improper as to AFMA, the process that was served upon it outside of Delaware is clearly defective. *See* Rule 4(f), F.R.Civ.P. Accordingly, the complaint will be dismissed with respect to AFMA for lack of proper venue and insufficient service of process.[32]

■ The remaining matter, of course, is whether RLCo and Libco are transacting business within this district. With respect to this issue the plaintiffs point to the following uncontroverted facts. As an importer and distributor of athletic footwear, Libco sells its merchandise to about fifteen or eighteen retail stores in Delaware. Its annual sales since 1975 to these customers exceeds $225,000, or about one percent of its total business revenues.[33] Libco, however, does not maintain its inventory in this state and all sales are F.O.B. its warehouse, New Jersey.[34] It has no office or personnel here, owns no property here and is not licensed or qualified to do business here.[35]

As a sales representative for distributors of athletic merchandise, RLCo solicits sales in the northeastern United States on behalf of nine companies, including Libco.[36] RLCo operates through a group of commissioned salesmen assigned to particular geographic areas and supplied with customer lists. These salesmen "service" the retail stores in their assigned area and forward the sales orders to RLCo. The companies which RLCo represents, however, retain the authority to either accept or reject the orders solicited by RLCo's salesmen.[37] A salesman visits Delaware six days each year on behalf of RLCo to "service" fifteen or eighteen retail stores;[38] the dollar volume of sales to these Delaware customers is about $250,000, or about one percent of the total volume of sales solicited by RLCo salesmen.[39] Finally, RLCo has no offices here, is not licensed to do business here, and does not advertise here.[40]

There is no dispute about the continuity of business activity in Delaware by RLCo and Libco during the relevant period. Rather, the debate centers on whether the business activity meets the "substantiality" requirement of *United States v. Scophony Corp., supra* and its progeny. Venue cannot be predicated on isolated business transactions of modest proportions, but, as plaintiffs seem to recognize, continuity and the total volume of business often tend to be interacting.

Clearly, annual receipts of $250,000 are not insignificant in most businesses and there is nothing in the record of this case to suggest that they are so in the athletic footwear trade. It seems equally clear that RLCo and Libco looked to Delaware as one of their important markets since it annually generated a respectable volume of business that can hardly be characterized as *de minimis*. The Court, therefore, finds that

**32.** Furthermore, since the *quantum* of business which must be transacted by a corporation in a district to make it possible to establish venue of an action under the antitrust laws is less than the "doing business" necessary to sustain service of process in other cases, the extraterritorial service of process effected upon AFMA under the Delaware long arm statute, 8 Del.C. § 382, was also defective. *United Industrial Corp. v. Nuclear Corp. of America,* 237 F.Supp. 971, 978 (D.Del.1964); *Windsor Theatre Co. v. Loew's, Inc.,* 79 F.Supp. 871, 873 (D.D.C.1948).

The other grounds urged by AFMA in support of its motion to dismiss need not be considered. AFMA also filed a motion under Rule 12(e), F.R.Civ.P., for a more definite statement of the plaintiffs' complaint, but in view of the Court's holding with regard to venue and service of process, the motion need not be reached.

**33.** Docket Item 20, Patrone Affidavit, pars. 2, 7.

**34.** *Id.,* pars. 4, 5.

**35.** *Id.,* pars. 2, 7.

**36.** Docket Item 20, Lichtenberg Affidavit, pars. 2, 3. It appears that Libco and RLCo share some officers and directors, although the companies are separate entities.

**37.** *Id.*

**38.** Docket Item 28, Interrogatory and Answer 11; Docket Item 20, Kardon Affidavit.

**39.** Docket Item 28, Interrogatory and Answer 9. All such sales are F.O.B. a state outside Delaware. *Id.*

**40.** Docket Item 20, Lichtenberg Affidavit, pars. 5, 6.

RLCo's annual solicitation of sales valued at $250,000, and Libco's sale and delivery of goods comparably valued, is sufficiently substantial to satisfy the amorphous test established in *United States v. Scophony Corp., supra.*[41] *See B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co.,* 122 U.S. App.D.C. 402, 404, 355 F.2d 827, 829–30 (1965); *Lower Colorado River Authority v. Westinghouse Electric Corp.,* 219 F.Supp. 743 (W.D.Tex.1963); *Sunbury Wire Rope Mfg. Co. v. United States Steel Corp.,* 129 F.Supp. 425, 427 (E.D.Pa.1955).

■ It is possible in one way or another, of course, to seize upon particular facts, or their absence, to challenge the assertion that a corporation is transacting business within a district. In this case, RLCo and Libco emphasize that revenue derived from *solicitation* of sales, and *actual* sales, in Delaware represent only one percent of their annual business income. The Court, however, agrees with those cases which hold that the proper measure of substantiality of sales within a district is the absolute dollar amount of those sales,[42] *e. g., B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co., supra* ($167,000 over two-year period; percentage not given); *Green v. United States Chewing Gum Mfg. Co.,* 224 F.2d 369, 371–72 (C.A.5, 1955) ($25,000 per year, but this was claimed to be but a small part of the total business of the defendant company); *United States v. Burlington Industries, Inc.,* 247 F.Supp. 185, 187 (S.D.N.Y. 1965) ($84,316 over three-year period, but this was claimed to be a "thimbleful of business"); *Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., supra* ($600,000 over two-year period; 0.6 percent), and,

therefore, the arguments based on the percentage test are unpersuasive.

■ Nor is it persuasive that because Libco ships its goods F.O.B. New Jersey there is no "delivery" of its goods into this district. This contention has been soundly rejected by other courts in cases similar to this one.[43] *E. g., B. J. Semel, Inc. v. United Fireworks Mfg. Co., supra* at 827; *Green v. United States Chewing Gum Mfg. Co., supra* at 374; *Austad v. United States Steel Corp.,* 141 F.Supp. 437, 441 (N.D.Cal.1956); *Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., supra* at 427–28. In *B. J. Semel, Inc. v. United Fireworks Mfg. Co., supra,* the court reasoned that a seller should not be able to determine his amenability to suit under § 12 by use of a particular method of shipping. "Were it otherwise, F.O.B. would always, and without more, compel the buyer to litigate on the seller's home grounds—the very result which Congress sought to avoid in Section 12." 355 F.2d at 832.

■ Finally, RLCo contends that it does not actually solicit business within Delaware because its salesmen are independent and paid on a commission, instead of a salary, basis. But clearly its business objective is to solicit orders from Delaware customers on a *continuing* and *regular* basis and the fact that it chooses to accomplish this objective through a commissioned salesman, rather than a paid employee, should be no more determinative of RLCo's amenability to suit here than Libco's use of particular shipping practices should be. The payment of a commission fee rather than a salary alters neither the business reality of the matter nor the propriety of venue in

**41.** Actually, the venue test enunciated by the Supreme Court in the *Scophony* case contained no guidelines for its application, thereby leaving the proper measurement of substantiality of sales unsettled. The lack of any clear direction meant that individual courts were required to establish their own tests of substantiality, with a resultant lack of uniformity. Compare *Lower Colorado River Authority v. Westinghouse Elec. Corp.,* 219 F.Supp. 743 (W.D.Tex.1963), *with Ohio-Midland Light & Power Co. v. Ohio Brass Co.,* 221 F.Supp. 405 (S.D.Ohio 1962).

**42.** Obviously, the absolute number of dollars necessary to reach the minimum level of "substantiality" to find venue is a highly relative concept which is shaped, in part, by other factors (*e. g., continuity* of sales activity) in the particular setting. Cf. *Donlan v. Carvel,* 193 F.Supp. 246, 248 (D.Md.1961).

**43.** To the extent that *Ohio-Midland Light & Power Co. v. Ohio Brass Co.,* 221 F.Supp. 405 (S.D.Ohio 1962), relied upon by Libco, is to the contrary, the Court declines to follow it.

this case.[44]  *Cf. Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 374 F.Supp. 184, 188 (D.Del.1974).  In sum, the Court finds that RLCo and Libco transact business of a substantial character in this district and, accordingly, venue is proper here.  Thus, with venue correctly established, service of process upon defendants at their corporate headquarters in New Jersey, the district of which they are inhabitants, was valid under § 12 of the Clayton Act.  15 U.S.C. § 22; *Eastman Kodak Co. of New York v. Southern Photo Materials Co., supra,* 273 U.S. at 373–74, 47 S.Ct. 400.  The motions of Libco and RLCo to quash service of process and dismiss the complaint will be denied.

## THE LANDO AND LIBONATI MOTIONS TO DISMISS FOR LACK OF JURISDICTION

The Lando and Libonati motions principally raise the question whether this Court acquired in personam jurisdiction of them when they were served with the summons and complaint outside the district of Delaware.[45]

▮▮▮  In determining the validity of extraterritorial service of process reference is made to Rule 4 of the Federal Rules of Civil Procedure which in part provides:

"(d)(7) [Service of process upon a defendant] is . . . sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

(f) *Territorial Limits of Effective Service.*  All process other than a subpoena

may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state. . . ."

The plaintiffs, however, do not purport to base the extraterritorial service upon these individual defendants on any state law, *see United States Dental Institute v. American Ass'n of Orthodontists, supra* 396 F.Supp. at 569–70, and the Court is not aware of any federal statute applicable to the present proceeding which would authorize the type of service effected in this case.  Section 5 of the Sherman Act, 15 U.S.C. § 5 and § 15 of the Clayton Act, 15 U.S.C. § 25, authorize extraterritorial service only in suits brought by the government, and § 12 of the Clayton Act, 15 U.S.C. § 22, authorizes such service only in the context of suits against corporations.  Although § 4 of the Clayton Act, 15 U.S.C. § 15, authorizes civil suits against non-corporate defendants "in the district in which the defendant resides or is found or has an agent," it does not authorize service in a district other than that in which the suit is brought.  *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (C.A.3, 1944).  Plaintiffs have not suggested, nor has the Court discovered, any other statute authorizing extraterritorial service of process in these circumstances.  The service of process effected upon Lando and Libonati outside this district was defective and the Court accordingly lacks in personam jurisdiction of them.

The plaintiffs apparently recognize the inescapability of this result for their only response is that the claims against Lando and Libonati should be transferred under 28 U.S.C. § 1406(a) to districts where venue

---

**44.**  RLCo has cited *Reid v. University of Minnesota,* 107 F.Supp. 439 (N.D.Ohio 1952) as contrary authority.  While *Reid* did involve a commissioned salesman, the court's conclusion that venue was improper was *at least* equally predicated upon its finding that the corporate defendant's *sporadic* sales in the district amounted to only $6,439.14 over an eight-year period,

a circumstance different from that in this case. *Reid* is therefore unpersuasive.

**45.**  Service of process was effected by mail upon Lando at his principal place of business in Pittsburgh, Pennsylvania, and upon Libonati at his principal place of business in Springfield, New Jersey.

would be appropriate and personal jurisdiction could be obtained.[46]

However, a transfer of this case appears inappropriate for two reasons. First, neither Lando nor Libonati have asserted improper venue as a ground for their motions to dismiss; both defendants challenged the *power* of the Court over their persons, not the convenience of this Court as a forum. Section 1406(a) would therefore appear inapposite. Second, assuming § 1406(a) should be applied to this case, plaintiffs have failed to satisfy their burden of showing that in the interest of justice a transfer is required. *See Jones v. Radio Corp. of America,* 129 F.Supp. 440 (S.D.N.Y. 1955). There is no suggestion, for example, that the plaintiffs in good faith or through excusable neglect, inadvertence, or mistake were led to believe that venue was proper in this district, *Skilling v. Funk Aircraft Co.,* 173 F.Supp. 939 (W.D.Mo.1959), or that the defendants deliberately misled the

plaintiffs about venue, *Brenner v. Rubin,* 240 F.Supp. 467 (D.Mass.1965) or that the statute of limitations has, or is about to, run on the underlying claim. *United States for Use and Benefit of Angell Bros., Inc. v. Cave Construction, Inc.,* 250 F.Supp. 873 (D.Mont.1966); *Dennis v. Galvanek,* 171 F.Supp. 115 (M.D.Pa.1959); *Schultz v. McAfee,* 160 F.Supp. 210 (D.Me.1958). Thus, dismissal of the complaint as to Lando and Libonati appears more appropriate than a transfer in these circumstances.[47] Accordingly, the service of process effected upon Lando and Libonati will be quashed and the complaint dismissed as to them for lack of in personam jurisdiction.

## THE MOTIONS OF RLCo, LIBCO AND CAVALL TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

Libco, RLCo and Cavall have moved to dismiss the complaint for failure to state a

**46.** 28 U.S.C. § 1406(a) provides:
 "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

**47.** Plaintiffs' reliance on *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) as support for their argument that a transfer is required is misplaced. *Goldlawr* involved a private antitrust action brought against corporate and individual defendants in the United States District Court for the Eastern District of Pennsylvania. On a motion to dismiss on grounds of improper venue and lack of personal jurisdiction, the Pennsylvania District Court agreed that venue was improper as to two of the corporate defendants because neither was an inhabitant of, "found", or transacting business within the district. But rather than dismiss the action, the district court chose to transfer it under § 1406(a) to the Southern District of New York where personal jurisdiction could be obtained and venue was properly laid. The New York District Court dismissed the case on the ground that the Pennsylvania District Court had not had personal jurisdiction over the corporate defendants and, lacking such personal jurisdiction, it had not had power under § 1406(a) to transfer the action. *Id.* at 464–65, 82 S.Ct. 913. The Second Circuit affirmed, but the Supreme Court reversed, Mr. Justice Black holding that § 1406(a) is not limited to cases in which the transferring court

has personal jurisdiction over the defendants and that the Pennsylvania court therefore acted within its authority. *Id.* at 466–67, 82 S.Ct. 913.

*Goldlawr,* however, is distinguishable. First, the corporate defendants there had expressly objected to venue and thus had themselves caused the district court to consider the appropriate venue provisions. *See Farr's Inc. v. National Shoe Co.,* 191 F.Supp. 803 (E.D.Pa.1960). Second, in *Goldlawr,* a dismissal "would have resulted in plaintiff's losing a substantial part of its cause of action under the statute of limitations merely because it made a mistake in thinking that the [defendant] corporations could be 'found' or that they 'transact . . . business' in the Eastern District of Pennsylvania", and § 1406(a) clearly evinces a "congressional purpose to provide as effective a remedy as possible to avoid precisely this sort of injustice." 369 U.S. at 466, 82 S.Ct. at 915.

Unlike the *Goldlawr* defendants, Lando and Libonati assert only a lack of personal jurisdiction and defective service of process as grounds for their motions to dismiss. Furthermore, because it does not appear that the statute of limitations has run and because it does appear that the plaintiffs will have ample time and opportunity to file another action in a district court having jurisdiction over the person of these defendants, the Court concludes that a dismissal is more appropriate than a transfer. *See Optico Corp. v. Standard Tool Co.,* 285 F.Supp. 46, 50 (E.D.Pa.1968).

claim upon which relief can be granted.[48] Rule 12(b)(6), F.R.Civ.P.

▪ Because Rule 12(b)(6) necessitates a ruling on the merits of the claim at an early stage of plaintiffs' case, the plaintiffs are afforded the safeguard of having all their allegations taken as true and all inferences favorable to them will be drawn. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The decision disposing the case is then purely on the legal sufficiency of plaintiffs['] case: even were plaintiff[s] to prove all [their] allegations, [they] would be unable to prevail." *Mortensen v. First Federal Savings & Loan Assn.,* 549 F.2d 884, 891 (C.A.3, 1977). Furthermore, in the context of antitrust cases, where "the proof is largely in the hands of the alleged conspirators", *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), a dismissal "prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

▪ Applying this "concededly rigorous standard," the Court cannot conclude beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. The allegations of the complaint and favorable inferences drawn therefrom suggest that Cavall, in combination with Libonati, Libco and RLCo, forced the plaintiffs to abandon plans to operate a retail athletic footwear store, which would have been in close competition with Cavall, by denying supplies of the Adidas line to plaintiffs' retail stores. It is also alleged that the Adidas line is an integral part of plaintiffs' business and that the business could not be successful without it. Clearly, a refusal to sell or deliver essential goods as part of a combination or conspiracy to eliminate competition constitutes an actionable violation of the antitrust laws. *E. g., United States v. Parke, Davis & Co.,* 362 U.S. 29, 32, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.,* 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); *Burdett Sound, Inc. v. Altec Corp.,* 515 F.2d 1245 (C.A.5, 1975).

▪ Although defendant Cavall is correct when he notes that the complaint is ambiguous concerning his role in the alleged conspiracy,[49] that is an issue which should be raised at a later date when the record is more fully developed.[50] Furthermore, there is no requirement that a plaintiff plead with particularity every overt act allegedly committed by a defendant in furtherance of a conspiracy or the precise role played by an alleged conspirator. Cavall's objection on this ground could more properly be expressed in a motion for a more definite statement of the claim under Rule 12(e), F.R.Civ.P., or, after additional discovery, in a motion for summary judgment under Rule 56, F.R.Civ.P.

Accordingly, the Court concludes that the complaint contains the requisite allegations of injury caused by a conspiracy to eliminate competition in violation of the Sherman Act to withstand a motion to dismiss under Rule 12(b)(6).[51]

---

**48.** Docket Items 10 (Libco and RLCo) and 11 (Cavall). With respect to these motions, the Court considers only the pleadings in this case.

**49.** The complaint seems to suggest that Cavall initiated the conspiracy by objecting to the location of plaintiffs' store and pressuring Libco and RLCo to refuse to ship the Adidas line to plaintiffs' Newark and Marsh Road stores. Docket Item 1, par. 11. It is also alleged that Cavall was a motivating force in sustaining the life of the conspiracy. *See id.,* par. 11(f).

**50.** It is certainly true, of course, that in the interests of judicial economy it is not improper to dispose of a claim at this early stage, but the Supreme Court has cautioned that

"summary procedures should be used sparingly in . . . antitrust litigation where motive and intent play leading rules [and], the proof is largely in the hands of the alleged conspirators . . . ."

*Poller v. Columbia Broadcasting System, Inc., supra* at 472–73, 82 S.Ct. at 491.

**51.** It may well be, however, that even though plaintiffs' complaint adequately alleges a claim for relief under the Sherman Act sufficient to withstand a Rule 12(b)(6) motion, further proceedings will conclusively demonstrate that de-

## THE INDIVIDUAL PLAINTIFFS' § 4 STANDING

Defendant Cavall has moved to dismiss the individual plaintiffs from this action on the ground that in their capacity as shareholders, officers and directors of the corporate plaintiffs they lack standing to sue for any injuries that might have been suffered by the corporate plaintiffs as a result of the defendants' alleged antitrust violations.[52]

■ In this circuit, determining whether the individual plaintiffs have standing to sue under § 4 of the Clayton Act[53] requires a detailed, functional examination of the facts present in the case in light of the policies underlying the antitrust laws. An explanation of the type of inquiry to be made in any case involving a question of § 4 standing was recently provided by Judge Garth:

"Each case, therefore, must be carefully analyzed in terms of the particular factual matrix presented. In making this factual determination courts must look to, among other factors, the nature of the industry in which the alleged antitrust violation exists, the relationship of the plaintiff to the alleged violator, and the alleged effect of the antitrust violation upon the plaintiff. Then, while recognizing that breaches of the antitrust laws have effects throughout society, a court must decide whether this plaintiff is one 'whose protection is the fundamental purpose of the antitrust laws.'"

*Cromar Company v. Nuclear Materials & Equipment Corp.,* 543 F.2d 501, 506 (C.A.3, 1976). *See also Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (Brennan, J., dissenting opinion); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 447–48, 454 (C.A.3, 1977); *Bravman v. Bassett Furniture Industries,* 552 F.2d 90, 96–100 (C.A.3, 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 69, 54 L.Ed.2d 80 (1977).

■ The Court, after examining the relationship of the individual plaintiffs to the defendants, the directness of their injury, their position in the area of the economy threatened by the alleged anticompetitive acts and the Congressional intention in enacting § 4,[54] concludes that, in the circumstances present here, the individual plaintiffs do not have standing to sue on a claim under § 1 of the Sherman Act. The relationship between the defendants and the individual plaintiffs stems solely from the latter's *status* as officers, directors and stockholders of the corporate plaintiffs. The record indicates that the defendants' business relations were with the corporate plaintiffs, Athlete's Foot of Delaware, Inc. and Sport Shoe of Newark, Inc., as the owners and operators of the Newark and Marsh Road stores. There is no allegation that any of the defendants' anticompetitive practices were directed against the individual plaintiffs as shareholders, officers, or directors of Athlete's Foot of Delaware, Inc. or Sport Shoe of Newark, Inc. Essentially, the complaint charges that the defendants refused to deal with either of the corporate plaintiffs in order to eliminate the Newark store as a potential competitor with Cavall. Thus, the conduct which directly restrained the plaintiffs' ability to open a retail store was directed at the corporate plaintiffs, not the officers, directors or shareholders thereof. Any harm to the individual plaintiffs, therefore, would have to flow derivatively from injuries inflicted upon the corporate plaintiffs at whom the anticompetitive restraints were allegedly aimed.

fendants' conduct in fact did not violate the antitrust laws. *Hospital Building Co. v. Rex Hospital, supra* at 746 n.5, 96 S.Ct. 1848.

**52.** Docket Item 11. Defendants Lando 'and AFMA filed similar motions. Docket Items 7, 8.

**53.** Section 4, 15 U.S.C. § 15 provides in part: "Any person who shall be injured . . . by reason of anything forbidden in the anti-trust laws may sue therefor in any district court . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

**54.** *See Bravman v. Bassett Furniture Industries, Inc., supra* at 96 n.13; *Cromar Company v. Nuclear Materials & Equipment Corp., supra* at 505–06.

The Third Circuit has clearly adopted the precept that "the language [in § 4 of the Clayton Act] does not include indirect harm that the individual may [have suffered] as a stockholder through injury inflicted upon the corporation." *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732–34 (C.A.3, 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). In an earlier case, *Ash v. International Bus. Mach., Inc.*, 353 F.2d 491, 493–94 (C.A.3, 1965), *cert. denied*, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966), Chief Judge Hastie observed:

> "[T]he complaint discloses that the hurtful effect of [the corporation's] conduct upon the value of his stock in competing corporations is the only injury he claims to have suffered.
>
> Such harm is not enough to make the plaintiff a 'person * * * injured in his business or property' within the meaning of section 4 of the Clayton Act. The courts have consistently ruled that this language does not include the indirect harm that an individual may suffer as a stockholder through injury inflicted upon a corporation. [Citations omitted].
>
> Indeed, were the rule otherwise the distinction between a stockholder's derivative claim and a claim exercised in his primary right would disappear, and the public policy based strictures on derivative suits could be avoided merely by asserting that economic harm to a corporation in itself constituted justiciable personal injury to each owner of stock in the corporation."

The reasoning of *Kauffman* and *Ash* was recently adopted in a case involving the standing under § 4 of an officer of a corporation injured by the alleged antitrust violations of competitor companies. *Pitchford v. PEPI, Inc.*, 531 F.2d 92, 97 (C.A.3, 1976), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976). In *PEPI*, Judge Adams considered officer-employee standing in the same terms earlier used in *Ash, Kauffman*

and *Loeb v. Eastman Kodak Co.*, 183 F. 704 (C.A.3, 1910) with regard to creditors and stockholders, and held that an officer lacks § 4 standing to recover damages, in the form of lost income, for antitrust injuries suffered by his corporation. As the *PEPI*, court explained, although any injury to a corporation may affect its ability to pay salaries, just as it may affect the interests of a corporation's stockholders and creditors, there is no reason to interpret § 4 as creating such a remedy when none previously was known to the law. The corporation can pursue its own cause of action and in so doing will protect the rights of its stockholders, officers, employees and creditors. 531 F.2d at 97. The logic of *Ash, Kauffman* and *PEPI* applies with equal force to the individual plaintiffs' standing in their status as directors of the corporate plaintiffs.[55] There is no evidence that the restraints were directed against these individuals in their capacities as directors of Athlete's Foot of Delaware, Inc. or Sport Shoe of Newark, Inc., and any injury would therefore have to flow derivatively from injuries to the corporations. Although the corporate plaintiffs have a cause of action based on the facts alleged here, their officers, directors and shareholders have no standing to sue in these circumstances. Accordingly, based on the facts present in this case, the individual plaintiffs are without standing to sue under § 4 of the Clayton Act.

An order will be entered in accordance with this opinion.

---

**55.** *See Martens v. Barrett*, 245 F.2d 844, 846 (C.A.5, 1957) (holding that the corporation alone, not its stockholders (few or many), offi-

cers, directors, creditors or licensors, has standing to sue for treble damages under § 4).